FILED
7/1/2019 11:54 AM
JOHN F. WARREN
COUNTY CLERK
DALLAS COUNTY

Case 3:19-cv-02256-E  Document 12-3  Filed 09/20/19  Page 2 of 106  PageID 564

CAUSE NO. <u>CC-19-03859-A</u>

| | | |
|---|---|---|
| **DAVIDA MCDOUGAL,** | § | **IN THE COUNTY COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **AT LAW NO. _____** |
| | § | |
| **TRINITY FINANCIAL SERVICES** | § | |
| **LLC, AND THE BANK OF NEW YORK** | § | |
| **MELLON TRUST COMPANY,** | § | |
| **NATIONAL ASSOCIATION FKA** | § | |
| **THE BANK OF NEW YORK TRUST** | § | |
| **COMPANY, N.A. AS SUCCESOR TO** | § | |
| **JPMORGAN CHASE BANK N.A. AS** | § | |
| **TRUSTEE FOR RASC 2004-KS2,** | § | |
| | § | |
| **Defendants.** | § | **DALLAS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Davida McDougal ("Plaintiff" herein), filing this Original Petition, Application for Injunctive Relief, and Request for Disclosures complaining of Trinity Financial Services LLC ("Trinity"), and The Bank of New York Mellon Trust Company National Association FKA The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A., as Trustee for RASC 2004-KS2 ("Mellon") (collectively "Defendants" herein) and for causes of action would respectfully show the Court as follows:

### DISCOVERY

1.      Plaintiff intends to conduct discovery under Texas Rules of Civil Procedure 190.3 (Level 2).

## PARTIES

2.      Plaintiff is an individual who resides in Dallas County, Texas and may be served with process on the undersigned legal counsel.

3.      Trinity Financial Services LLC is an entity formed under the laws of the State of Wyoming which conducts business in Dallas County, Texas and may be served with process as follows:

> Trinity Financial Services, LLC
> C/O its registered agent, Registered Agent Solutions, Inc.
> 1701 Directors Blvd Suite 300
> Austin, Texas 78744

4.      The Bank of New York Mellon Trust Company, N.A., As Trustee is an entity formed under the laws of the State of Virginia which conducts business in Dallas County, Texas and may be served with process as follows:

> The Bank of New York Mellon Trust Company, N.A., As Trustee
> C/O Corporate Officer
> 500 Grant Street
> BNY Mellon Center Rm 772
> Pittsburgh, PA 15219-2504

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over Defendants.  The Court has jurisdiction over Defendant Mellon because this defendant is an entity formed under the laws of the State of Virginia which conducts business in Dallas County, Texas.  The Court has jurisdiction over Defendant Trinity because this defendant is an entity formed under the laws of the State of Utah which conducts business in Dallas County, Texas.  The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court.

6.      Venue is mandatory in Dallas County, Texas because the subject matter of the lawsuit involves real property which is located in Dallas County, Texas. Further, all or a substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in Dallas County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

2

## RELEVANT FACTS

7.     On or about November 13, 2003, Plaintiff and her husband, Kenneth McDougal purchased the real property and improvements with the street address of 218 Hummingbird Lane, Duncanville, Texas 75137 (the "Property").  Plaintiff and her husband took title to the Property through a General Warranty Deed executed on November 13, 2003 which was then recorded in the real property records of Dallas County, Texas under instrument number 2643148.

8.     Plaintiff and her husband executed a Deed of Trust dated November 13, 2003 for the amount of $128,700.00 wherein Sebring Capital Partners, Limited Partnership ("Sebring") was the lender with Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary of the Deed of Trust, which was then recorded in the real property records of Dallas County, Texas under instrument number 2643149 ("First Lien").

9.     Plaintiff and her husband also executed a Purchase Money Security Document (Second Lien) dated November 13, 2003 for the amount of $14,300.00 with Sebring as the lender and MERS as the beneficiary, which was then recorded in the real property records of Dallas County, Texas under instrument number 2643152 ("Second Lien").   The Second Lien and accompanying documents are referred to as the Loan.

10.     Plaintiff and her husband have resided at the Property as their homestead ever since.

11.     Upon information and belief, Mellon is now the beneficiary of the Loan and Trinity is acting as the mortgage servicer of the Loan on behalf of Mellon.  An Assignment of Purchase Money Security Document dated November 5, 2012 was recorded in the real property records of Dallas County, Texas under instrument number 201200333842 ("Assignment").

12.     Upon information and belief, the Loan was declared in default and then accelerated on or about March 2009 by Defendants are Defendants' predecessors in interest. The Property has

been posted for foreclosure sale multiple times. However, Defendants have not completed a valid foreclosure sale on the Property to date.

13.     It has been more than 4 years since the Loan was accelerated and therefore, Defendants are precluded from foreclosing on the Property as the Second Lien is now void as a matter of law.

14.     Defendants sent Plaintiff a notice that the payoff on the Second Lien was $33,155.51 good through July 6, 2019. Defendants have posted Plaintiff's Property for a foreclosure sale scheduled to occur on July 2, 2019.

## CLAIM

### AGENCY & RESPONDEAT SUPERIOR

15.     Wherever it is alleged that Defendants did anything, or failed to do anything, it is meant that such conduct was done by Defendants' employees, vice principals, agents, attorneys, and/or affiliated entities, in the normal or routine scope of their authority, or ratified by Defendants, or done with such apparent authority so as to cause Plaintiff to reasonably rely that such conduct was within the scope of their authority. Plaintiff did rely to Plaintiff's detriment on Defendants' representatives being vested with authority for their conduct. Defendants are vicariously liable for the conduct of their employees, vice principals, agents, attorneys, affiliated entities, and representatives of Defendants' affiliated entities by virtue of respondeat superior, apparent authority, and estoppel doctrines.

### DECLARATORY JUDGMENT

16.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made above.

17.     Pursuant to Texas Civil Practice and Remedies Code Chapter 37, Plaintiff seeks a

4

declaratory judgment that the Second Lien on the Property is void.

18.    Pursuant to Texas Civil Practice and Remedies Code Chapter 16, because Defendants failed to foreclose within four years of the date the Loan was accelerated, the Second Lien and power of sale to enforce the lien are now void. *See* Tex. Civ. Prac. & Rem. Code Section 16.035.

## CONDITIONS PRECEDENT

19.    All conditions precedent to the Plaintiff's right to bring this cause of action have been performed, have occurred, or have been waived.

## REQUEST FOR DISCLOSURES

20.    Defendants are hereby requested to disclose to Plaintiff, within 50 days of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil Procedure.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

21.    To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made above.

22.    Unless Defendants are enjoined, Plaintiff will suffer probable harm which is imminent and irreparable. More specifically, if not enjoined, Defendants may sell the Property at any time during the pendency of this matter thus depriving Plaintiff of ownership of the Property and potentially causing Plaintiff to be dispossessed of the Property. Plaintiff has no adequate remedy at law because the subject matter is real property, and any legal remedy of which Plaintiff may avail himself will not give him as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

23.    Therefore, Plaintiff requests that this Court issue a Temporary Restraining Order

5

and, thereafter, a Temporary Injunction, to restrain Defendant from selling the real property which is the subject matter of this lawsuit and is commonly known as 218 Hummingbird Lane, Duncanville, Texas 75137 as well as from taking any legal action to evict Plaintiff and any other occupants from, or enforcing a writ of possession regarding, the aforementioned property.

24.     Plaintiff is likely to prevail on the merits of the lawsuit as described above.

25.     The granting of the relief requested is not inconsistent with public policy considerations.

**BOND**

26.     Plaintiff is willing to post a reasonable temporary restraining order bond and requests that the Court set such bond.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

A.     Defendants be cited to appear and answer herein;

B.     The Court conduct a hearing on Plaintiff's Application for Injunctive Relief;

C.     A temporary restraining order be issued restraining Defendants, their agents, employees, and legal counsel, and those acting in concert or participation with Defendants who receive actual notice of the Order, by personal service or otherwise, from selling the real property which is the subject matter of this lawsuit and is commonly known as 218 Hummingbird Lane, Duncanville, Texas 75137;

D.     A Temporary Injunction be entered enjoining Defendants from the same acts listed in Paragraph C above; and

E.     Upon final hearing or trial hereof, the Court order a judgment in favor of Plaintiff

**Appendix 6**

against Defendants declaring the Second Lien void, and such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

VILT AND ASSOCIATES, P.C.

/s/ Jason A. LeBoeuf
Robert C. VILT
Texas Bar Number 00788586
Email: clay@viltlaw.com
5177 Richmond Avenue, Suite 1142
Houston, Texas 77056
Telephone:     713.840.7570
Facsimile:      713.877.1827

Jason A. LeBoeuf
Texas Bar Number 24032662
Email: jason@viltlaw.com
Richardson Telecom
2435 North Central Expressway, Suite 1200
Richardson, Texas 75080
Telephone:     214.712.7495
Facsimile:      713.877.1827

ATTORNEYS FOR PLAINTIFF

CAUSE NO. _____

| | | |
|---|---|---|
| DAVIDA MCDOUGAL, | § | IN THE COUNTY COURT |
| Plaintiff, | § | |
| v. | § | AT LAW NO. _____ |
| TRINITY FINANCIAL SERVICES LLC, AND THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE, | § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S DECLARATION

"My name is Davida McDougal and I am the Plaintiff in the above-captioned lawsuit. I have read the Plaintiff's Original Petition, Application for Injunctive Relief, and Request for Disclosures to which this Declaration relates and offer this Declaration in support of the statements and arguments asserted therein.

My name is Davida McDougal my date of birth is _10 - 1 - 1955_, and my address is 218 Hummingbird Lane, Duncanville, Texas 75137. I declare under penalty of perjury that the foregoing information is true and correct."

Executed in Dallas County, State of Texas, on the _3rd_ day of _June_ 2019.

_Davida McDougal_
DAVIDA MCDOUGAL

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVIDA MCDOUGAL | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL NO. 3:19-CV-02256-E |
| | § | |
| TRINITY FINANCIAL SERVICES, | § | |
| LLC and THE BANK OF NEW YORK | § | |
| MELLON TRUST COMPANY, | § | |
| NATIONAL ASSOCIATION FKA | § | |
| THE BANK OF NEW YORK TRUST | § | |
| COMPANY, N.A. AS SUCCESSOR | § | |
| TO JPMORGAN CHASE BANK N.A. | § | |
| AS TRUSTEE FOR RASC2004-KS2 | § | |
| | § | |
| *Defendants.* | § | |

---

## BUSINESS RECORDS AFFIDAVIT

---

Before me, the undersigned notary, personally appeared Don A. Madden III a person known to me, who having been sworn stated on oath:

1.      My name is Don A. Madden III. I am over the age of 21 years and I am fully competent to make this affidavit. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2.      I currently hold a position as President at Trinity Financial Services, LLC ("Trinity"). I am authorized to make this Affidavit on behalf of Trinity which is the owner and holder of the promissory note at issue in the above-numbered and

Civil No. 3:19-cv-02256-E; *McDougal V. Trinity Financial Services, LLC*
Business Records Affidavit

TX-20-78267-DL
Page 2 of 5

Exhibit 1
Page 1 of 4   **Appendix 9**

styled lawsuit with respect to the mortgage loan at issue involving Kenneth McDougal and Davida J. McDougal ("Borrowers").

3.    I make this affidavit based on my personal knowledge of the facts contained herein and they are true and correct. My personal knowledge is based on my review of the records described below. In the regular performance of my job functions at Trinity, I am familiar with the business records maintained by Trinity for the purpose of servicing mortgage loans, collecting payments and pursuing foreclosure when necessary. These records are kept by Trinity in the regular course of business, and it was Trinity regular course of practice of Trinity for an employee or representative of Trinity with knowledge of the act, event, condition, opinion or diagnosis recorded to make the record or to transmit information thereof to be included in such records; and the record was made at or near the time or reasonably soon thereafter.

4.    I researched and reviewed all of the necessary documents in Trinity's possession regarding Borrowers' loan ("Loan"), including prior servicer files which Trinity has incorporated into its own records and relies upon their accuracy, and the statements in this Affidavit are based upon my research and review of these documents.

5.    On or about April 25, 2019, Borrowers executed a Deed of Trust ("Deed of Trust") which secured a loan in the amount of $14,300.00 against the real property commonly known as 218 Hummingbird Lane, Duncanville, Texas 75137. The Deed of Trust was recorded on November 20, 2003 in the official records of

Civil No. 3:19-cv-02256-E; *McDougal V. Trinity Financial Services, LLC*          TX-20-78267-DL
Business Records Affidavit                                                                                      Page 3 of 5

Exhibit 1
Page 2 of 4          **Appendix 10**

Dallas County, Texas as instrument number 2643152.  A true and correct copy of the Deed of Trust is attached hereto and incorporated herein as Exhibit 1-1.

6.      On November 9, 2012, a document was recorded in the official records of Dallas County, Texas as instrument number 201200333842 reflecting the assignment of the Deed of Trust to The Bank of New York Mellon Trust Company, National Association FKA The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RASC 2004-KS2.  A true and correct copy of said assignment is attached hereto and incorporated herein as Ex. 1-2.

7.      On January 22, 2019, a document was recorded in the official records of Dallas County, Texas as instrument number 2019000017977 reflecting the assignment of the Deed of Trust to Ocwen Loan Servicing, LLC.  A true and correct copy of said assignment is attached hereto and incorporated herein as Ex. 1-3.

8.      On January 22, 2019, a document was recorded in the official records of Dallas County, Texas as instrument number 2019000017977 reflecting the assignment of the Deed of Trust to Stelis, LLC.  A true and correct copy of said assignment is attached hereto and incorporated herein as Ex. 1-4.

9.      On January 22, 2019, a document was recorded in the official records of Dallas County, Texas as instrument number 2019000017977 reflecting the assignment of the Deed of Trust to Trinity.  A true and correct copy of said assignment is attached hereto and incorporated herein as Ex. 1-5.

10.     On March 26, 2019, Trinity issued a Notice of Default and Intent to Accelerate ("Demand Letter") to Borrowers regarding the Deed of Trust.  A true and

Civil No. 3:19-cv-02256-E: *McDougal V. Trinity Financial Services, LLC*          TX-20-78267-DL
Business Records Affidavit                                                                                    Page 4 of 5

Exhibit 1
Page 3 of 4          **Appendix 11**

correct copy of the Demand Letter is attached hereto and incorporated herein as Exhibit 1-6.

11.    On May 30, 2019, Trinity, through counsel, issued a letter ("Acceleration Letter") to Borrowers regarding the Deed of Trust.  A true and correct copy of the Acceleration Letter is attached hereto and incorporated herein as Exhibit 1-7.

12.    Information related to acceleration of the balance due and owing under the terms of the Deed of Trust is information that is regularly kept by Trinity.  I have not been able to locate any documents in Trinity's records that reflect that the balance due and owing under the terms of the Deed of Trust was accelerated at any time prior to 2019.

13.    The records attached hereto are the originals, or exact duplicates of the originals, and the original documents are physically kept by Trinity as custodian.

FURTHER AFFIANT SAYETH NOT.

Signed this ___14___ day of ___February___, 2021.

Trinity Financial Services LLC

Name: Don A. Madden III
Title: President

STATE OF <u>FLORIDA</u>                    §
                                         §
COUNTY OF <u>PALM BEACH</u>              §

SWORN AND SUBSCRIBED to before me, the undersigned notary public, by means of physical presence, on this ___4___ day of ___February___ 2021.

SAMANTHA RICH
State of Florida-Notary Public
Commission # GG 118111
My Commission Expires
June 22, 2021

Notary Public, in and for the State of Florida

Civil No. 3:19-cv-02256-E; *McDougal v. Trinity Financial Services, LLC*          TX-20-78267-DL
Business Records Affidavit                                                          Page 5 of 5

Exhibit 1
Page 4 of 4    **Appendix 12**

*38.00*

2643152

4289660
11/20/03

$38.00  Deed of Trust

# PURCHASE MONEY SECURITY DOCUMENT
## (Second Lien)

Loan Number _____

MERS Number _____

## 1. DEFINITIONS

(A) "Loan Agreement" means the Note, Security Document, deed of trust, any other related document, or any combination of those documents, under which you have made a loan to me.

(B) "Security Document" means this document, which is dated __NOVEMBER 13, 2003__, together with all Riders to this document.

(C) "I" or "me" means __KENNETH MCDOUGAL  AND SPOUSE, DAVIDA J. MCDOUGAL__

the grantor under this Security Document and the person who signed the Note ("Borrower").

(D) "You" means __SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP__
_____ ("Lender"). Your address is __4000 INTERNATIONAL PKWY, #3000,__
__CARROLLTON, TEXAS  75007__. Lender includes any holder of the
Note who is entitled to receive payments under the Note.

(E) "Trustee" is __DON W. LEDBETTER__
_____. Trustee's address is __17130 DALLAS PARKWAY, #115, DALLAS, TEXAS  75248__
_____.

(F) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Document.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(G) "Note" means the Purchase Money Note signed by me and dated __NOVEMBER 13, 2003__. The Note states that the amount I owe you is __FOURTEEN THOUSAND THREE HUNDRED AND 00/100ths__
_____ Dollars (U.S. $__14,300.00__) plus interest. I have promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than __DECEMBER 1, 2033__.

(H) The "Property" means the real estate that is described below under the heading "Transfer of Rights in the Property."

(I) "Riders" means all Riders to this Security Document that I execute. The Riders include (check box as applicable):

☐ Texas Purchase Money Condominium Rider
☐ Texas Purchase Money Planned Unit Development Rider
☐ Other: _____

Texas Purchase Money Model Security Document (Second Lien) with MERS-Page 1 of 13

2003 230 03419

Exhibit 1-1
Page 1 of 14   **Appendix 13**

(J) "Applicable Law" means all controlling applicable federal, Texas and state constitutions, statutes, regulations, administrative rules, local ordinances and judicial and administrative orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on me or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. The term includes point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 5 of this Security Document.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than proceeds paid under my insurance) for: damage or destruction of the Property; condemnation or other taking of all or any part of the Property; conveyance instead of condemnation; or misrepresentations or omissions related to the value or condition of the Property.

(O) "Periodic Payment" means the regularly scheduled amount due for principal and interest under the Note plus any amounts under this Security Document.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 *et seq.*) and Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.   As used in this Security Document, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan Agreement does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of me" means any party that has taken title to the Property, whether or not that party has assumed my obligations under the Loan Agreement.

(R) "Ground Rents" means amounts I owe if I rented the real property under the buildings covered by this Security Document.  One of the arrangements usually takes the form of a long-term "ground lease."

## 2.  SECURED AGREEMENT

To secure this Loan Agreement I give you a security interest in the Property including existing and future improvements, easements, fixtures, attachments, replacements and additions to the Property, insurance refunds, and proceeds.

## 3.  TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Document is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Document secures:

    a. repayment of the Note, and all extensions and modifications of the Note; and
    b. the completion of my promises and agreements under the Loan Agreement.

For this reason, I give to the Trustee, in trust, with power of sale, the Property located in   __DALLAS____
County at   __218 HUMMINGBIRD LANE, DUNCANVILLE, TEXAS 75137_____
and further described as:

LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE CITY OF DUNCANVILLE, DALLAS COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS

Texas Purchase Money Model Security Document (Second Lien) with MERS-Page 2 of 13

Exhibit 1-1
Page 2 of 14     **Appendix 14**

The security interest in the Property includes existing and future improvements, easements, fixtures, attachments, replacements and additions to the Property, insurance refunds, and proceeds. Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Document, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Document.

I promise that I own the Property and have the right to grant you an interest in it. I also promise that the Property is free of any lien, except liens that are publicly recorded. I promise that I will generally defend the title to the Property. I will be responsible for your losses that result from a conflicting ownership right in the Property. Any default under my agreements with you will be a default of this Security Document.

YOU AND I PROMISE:

## 4. PAYMENT OF LATE CHARGES AND PREPAYMENT

I will timely pay the principal, interest, and any other amounts due under the Loan Agreement. I will comply with the requirements of my escrow account under the Loan Agreement. I will make payments in U.S. currency. If any check is returned to you unpaid, you may select the form of future payments including:

    a. cash;
    b. money order;
    c. certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are
       federally insured; or
    d. Electronic Funds Transfer.

I will make payments to the location as you direct. You will apply my payments against the Loan Agreement only when they are received at the designated location. You may change the location for payments if you give me notice.

You may return any partial payment that does not bring the account current. You may accept any payment or partial payment that does not bring the account current without losing your rights to refuse full or partial payments in the future. I will not use any offset or claim against you to relieve me from my duty to make payments under the Loan Agreement.

## 5. FUNDS FOR ESCROW ITEMS

I will pay you an amount ("Funds") for:

    a. taxes and assessments and other items that can take priority over your security interest in the Property under
       the Loan Agreement;
    b. leasehold payments or Ground Rents on the Property, if any; and
    c. premiums for any insurance you require under the Loan Agreement.

These items are called "Escrow Items." At any time during the term of the Loan Agreement, you may require me to pay Community Association Dues, Fees, and Assessments, if any, as an Escrow Item.

I will promptly give you all notices of amounts to be paid. I will pay you the Funds for Escrow Items unless you, at any time, waive my duty to pay you. Any escrow waiver must be in writing. If you waive my duty to pay you the

Texas Purchase Money Model Security Document (Second Lien) with MERS–Page 3 of 13

Exhibit 1-1
Page 3 of 14   Appendix 15

Funds, I will pay, at your direction, the amounts due for waived Escrow Items. If you require, I will give you receipts showing timely payment. My duty to make Escrow Item payments and to provide receipts is an independent promise in the Loan Agreement.

If you grant me an escrow waiver, you may require me to pay the waived Escrow Items. If I fail to directly pay the waived Escrow Items, you may use any right given to you in the Loan Agreement. You may pay waived Escrow Items and require me to repay you. You may cancel the waiver for Escrow Items at any time by a notice that complies with the Loan Agreement. If you cancel the waiver, I will pay you all Funds that are then required under this Section.

At any time you may collect and hold Funds in an amount:

    a.  to permit you to apply the Funds at the time specified under RESPA, and
    b.  not to exceed the maximum amount you may require under RESPA.

You will estimate the amount of Funds due on the basis of current data and reasonable estimates of future expenses for Escrow Items or otherwise, according to Applicable Law. The Funds will be held in an institution whose deposits are federally insured (including you, if your deposits are insured) or in any Federal Home Loan Bank.

You will timely pay Escrow Items as required by RESPA. You will not charge me a fee for maintaining or handling my escrow account. You are not required to pay me any interest on the amounts in my escrow account. You will give me an annual accounting of the Funds as required by RESPA. If there is a surplus in my escrow account, you will follow RESPA. If there is a shortage or deficiency, as defined by RESPA, you will notify me, and I will pay you the amount necessary to make up the shortage or deficiency. I will repay the shortage or deficiency in no more than twelve monthly payments. You will promptly return to me any Funds after I paid the Loan Agreement in full.

## 6. CHARGES AND LIENS

I will timely pay all taxes, assessments, charges, and fines relating to the Property that can take priority over this Security Document. I also will timely pay leasehold payments or Ground Rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. If these items are Escrow Items, I will pay them as required by the Loan Agreement. I will promptly satisfy any lien that has priority over this Security Document unless I:

    a.  agree in writing to pay the amount secured by the lien in a manner acceptable to you and only so long as I comply with my agreement;
    b.  contest the lien in good faith by stopping the enforcement of the lien through legal proceedings (this contest must be satisfactory to you); or
    c.  obtain an agreement from the holder of the lien that is satisfactory to you.

If you determine that any part of the Property is subject to a lien that can take priority over this Security Document, you may give me a notice identifying the lien. I will satisfy the lien or take one or more of the actions described above in this section within 10 days of the date of the notice.

## 7. PROPERTY INSURANCE

I will insure the current and future improvements to the Property against loss by fire, hazards included within the term "extended coverage," and any other hazards including earthquakes and floods, as you may require. I will keep this insurance in the amounts (including deductible levels) and for the periods that you require. You may change these insurance requirements during the term of the Loan Agreement. I have the right to choose an insurance carrier that is acceptable to you. You will exercise your right to disapprove reasonably.

I will pay any fee charged by the Federal Emergency Management Agency for the review of any flood zone determination. You may require me to pay either:

    a.  a one-time charge for flood zone determination, certification and tracking services; or
    b.  a one-time charge for flood zone determination and certification services; and subsequent charges each time re-mappings or similar changes occur that reasonably might affect the determination or certification.

Texas Purchase Money Model Security Document (Second Lien) with MERS-Page 3 of 13

Exhibit 1-1
Page 4 of 14    **Appendix 16**

If I do not keep any required insurance, you may obtain insurance at your option and at my expense. You are not required to purchase any type or amount of insurance. Any insurance you buy will always protect you, but may not protect me, my equity in the Property, my contents in the Property or protect me from certain hazards or liability. I understand that this insurance may cost significantly more than insurance I can purchase. I will owe you for the cost of any insurance that you buy under this section. Interest will be charged on this amount at the interest rate used by the Note. The interest will be charged from the date you made the payment. You will give me notice of the amounts I owe under this Section.

You may disapprove any insurance policy or renewal. Any insurance policy must include a standard mortgage clause, and must name you as mortgagee or a loss payee. I will give you all insurance premium receipts and renewal notices, if you request. If I obtain any optional insurance to cover damage or destruction of the Property, I will name you as a loss payee. In the event of loss, I will give notice to you and the insurance company. You may file a claim if I do not file one promptly. You will apply insurance proceeds to repair or restore the Property unless your interest will be reduced or it will be economically unreasonable to perform the work. You may hold the insurance proceeds until you have had an opportunity to inspect the work and you consider the work to be acceptable. The insurance proceeds may be given in a single payment or multiple payments as the work is completed. You will not pay any interest on the insurance proceeds. If I hire a public adjuster or other third party, I am responsible for the fee. It will not be paid from the insurance proceeds. The insurance proceeds will be applied to the amount I owe if your interest will be reduced or if the work will be economically unreasonable to perform. You will pay me any excess insurance proceeds. You will apply insurance proceeds in the order provided by the Loan Agreement.

If I abandon the Property you may file, negotiate, and settle any insurance claim. If the insurance company offers to settle a claim and I do not respond within thirty days to a notice from you, then you may settle the claim. The 30-day period will begin when the notice is given. If I abandon the Property, fail to respond to the offer of settlement, or you foreclose on the Property, I assign to you:

    a.  my rights to any insurance proceeds in an amount not greater than what I owe; and
    b.  any of my other rights under insurance policies covering the Property.

You may apply the proceeds to repair or restore the Property or to the amount that I owe.

## 8. PRESERVATION, MAINTENANCE, PROTECTION, AND INSPECTION OF THE PROPERTY

I will not destroy, damage or impair the Property, allow it to deteriorate, or commit waste. Whether or not I live in the Property, I will maintain it in order to prevent it from deteriorating or decreasing in value due to its condition. I will promptly repair the damage to the Property to avoid further deterioration or damage unless you and I agree in writing that it is economically unreasonable. I will be responsible for repairing or restoring the Property only if you release the insurance or condemnation proceeds for the damage to or the taking of the Property. You may release proceeds for the repairs and restoration in a single payment or in a series of payments as the work is completed. I still am obligated to complete repairs or restoration of the Property even if there are not enough proceeds to complete the work. If this Security Document secures a unit in a condominium or planned unit development, I will perform all of my obligations under the declaration or covenants creating or governing the condominium or planned unit development, and any other relevant document. You or your agent may inspect the Property. You may inspect the interior of the Property with reasonable cause. You will give me notice stating reasonable cause when or before the interior inspection occurs.

## 9. PROTECTION OF LENDER'S INTEREST IN THE PROPERTY AND RIGHTS UNDER THE SECURITY DOCUMENT

You may do whatever is reasonable to protect your interest in the Property, including protecting or assessing the value of the Property, and securing or repairing the Property. You may do this when:

    a.  I fail to perform the promises and agreements contained in the Loan Agreement;
    b.  a legal proceeding might significantly affect your interest in the Property or rights under the Loan Agreement (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may have priority over the Loan Agreement or to enforce laws or regulations); or

Texas Purchase Money Model Security Document (Second Lien) with MERS-Page 5 of 13

Exhibit 1-1
Page 5 of 14   Appendix 17

c. I abandon the Property.

In order to protect your interest in the Property, you may:

a. pay amounts that are secured by a lien on the Property which has or will have priority over the Loan Agreement;
b. appear in court; or
c. pay reasonable attorneys' fees.

You may enter the Property to secure it. To secure the Property, you may make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. You have no duty to secure the Property. You are not liable for failing to take any action listed in this Section. Any amounts you pay under this Section will become my additional debt secured by the Loan Agreement. These amounts will earn interest at the rate specified in the Loan Agreement. The interest will begin on the date the amounts are paid. You will give me notice requesting payment of these amounts. If the Loan Agreement is on a leasehold, I will comply with the lease.

The following lien has a priority over the Loan Agreement: deed of trust in the amount of $ 128,700.00      to SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP                                              .

## 10. ASSIGNMENT OF MISCELLANEOUS PROCEEDS AND FORFEITURE

Any Miscellaneous Proceeds will be assigned and paid to you. If the Property is damaged, Miscellaneous Proceeds will be applied to restore or repair the Property. You will only do this if your interest in the Property will not be reduced and if the work will be economically reasonable to perform. You will have the right to hold Miscellaneous Proceeds until you inspect the Property to ensure the work has been completed to your satisfaction. You must make the inspection promptly. You may release proceeds for the work in a single payment or in multiple payments as the work is completed. You are not required to pay me any interest on the Miscellaneous Proceeds. The Miscellaneous Proceeds will be applied to the amount I owe if your interest in the Property will be reduced or the work will be economically unreasonable to perform. You will pay me any excess Miscellaneous Proceeds. You will apply Miscellaneous Proceeds in the order provided by the Loan Agreement.

You will apply all Miscellaneous Proceeds to the amount I owe in the event of a total taking, destruction, or loss in value of the Property. You will apply the Miscellaneous Proceeds even if all payments are current. You will give any excess Miscellaneous Proceeds to me.

A partial loss can include a taking, destruction, or loss in value. In the event of a partial loss, the Miscellaneous Proceeds will be applied in one of two ways:

a. If the fair market value of the Property immediately before the partial loss is less than the amount I owe immediately before the partial loss, then you will apply all Miscellaneous Proceeds to the amount I owe even if all payments are current.
b. If the fair market value of the Property immediately before the partial loss is equal to or greater than the amount I owe immediately before the partial loss, then you will apply Miscellaneous Proceeds to the amount I owe in the following manner:
  1. The amount of Miscellaneous Proceeds multiplied by the result of,
  2. The amount I owe immediately before the partial loss divided by the fair market value of the Property immediately before the partial loss.

You and I can agree otherwise in writing. You will give any excess Miscellaneous Proceeds to me.

If I abandon the Property, you may apply Miscellaneous Proceeds either to restore or repair the Property, or to the amount I owe.

Damage to the Property caused by a third party may result in a civil proceeding. If you give me notice that the third party offers to settle a claim for damages to the Property and I fail to respond to you within thirty days, you may accept the offer and apply the Miscellaneous Proceeds either to restore or repair the Property or to the amount I owe.

Texas Purchase Money Model Security Document (Second Lien) and MERS (page 6 of 13)

Exhibit 1-1
Page 6 of 14   Appendix 18

If the proceeding results in an award of damages, you will apply the Miscellaneous Proceeds according to this Section.

## 11. FORBEARANCE NOT A WAIVER

My successors and I will not be released from liability if you extend the time for payment or modify the payment schedule. If I pay late, you will not have to sue me or my successor to require timely future payments. You may refuse to extend time for payment or modify this Loan Agreement even if I request it. If you do not enforce your rights every time you, you may enforce them later.

## 12.   JOINT AND SEVERAL LIABILITY, SECURITY DOCUMENT EXECUTION, SUCCESSORS OBLIGATED

I understand that you may seek payment from me without first looking to any other person who signed the Note. Any person who signs this Security Document, but not the Note:

   a.   has no duty to pay the sums secured by this Security Document;
   b.   is not a surety or guarantor; and,
   c.   only grants the person's interest in the Property under the terms of this Security Document.

The lien against the Property is a voluntary lien and is a written agreement that shows the consent of each owner. You and I may extend, modify, or make any arrangements with respect to the terms of the Loan Agreement. Upon your approval, my successor who assumes my duties in writing will receive all of my rights and benefits under the Loan Agreement. I still will be responsible under the Loan Agreement unless you release me in writing. The Loan Agreement will extend to your assigns or successors.

## 13. EXTENSION OF CREDIT CHARGES

If an Applicable Law that sets a maximum charge is finally interpreted so that the interest, loan charges, or fees collected or to be collected with the Loan Agreement exceed the permitted amount, then you will:

   a.   reduce the amount to the amount permitted; or
   b.   refund the excessive amount to me.

You may choose to apply this refund to the amount I owe or pay it directly to me. If you apply the refund to the amount I owe, the refund will be treated as a partial prepayment.

If I default, you will be able to charge me reasonable fees paid to an attorney who is not your employee to protect your interest in the Property.

## 14. DELIVERY OF NOTICES

Under the Loan Agreement, you and I will give notices to each other in writing. Any notice under the Loan Agreement will be considered given to me when it is mailed by first class mail or when actually delivered to me at my address if given by another means. You will give notice to the Property address unless I provide you a different address. I will notify you promptly of any change of address. I will comply with any reasonable procedure for giving a change of address that you provide. There will only be one address for notice under the Loan Agreement. Notice to me will be considered notice to all persons who are obligated under the Loan Agreement unless Applicable Law requires a separate notice. I may give you notice by delivering or mailing it by first class mail to the address provided by you, unless you require a different procedure. You, however, will not receive notice under the Loan Agreement until you actually receive it. Legal requirements governing notices subject to the Loan Agreement will prevail over conditions in the Loan Agreement.

## 15. GOVERNING LAW AND SEVERABILITY

The Loan Agreement will be governed by Texas and federal law. If any provision in the Loan Agreement conflicts with any legal requirement, all non-conflicting provisions will remain effective.

Texas Purchase Money Model Security Document (Second Lien) with MERS-Page 7 of 13

Exhibit 1-1
Page 7 of 14   Appendix 19

### 16. RULES OF CONSTRUCTION

As used in the Loan Agreement:

    a.  words in the singular will mean and include the plural and vice versa; and
    b.  the word "may" gives sole discretion without imposing any duty to take action.

### 17. LOAN AGREEMENT COPIES

At the time the Loan Agreement is made, you will give me copies of all documents I sign.

### 18. TRANSFER OF INTEREST IN PROPERTY

"Interest in the Property" means any legal or beneficial interest. This term includes those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement (the intent of which is the transfer of title by me at a future date to a purchaser). If any part of the Property is sold or transferred without your prior written permission, you may require immediate payment of all I owe. You will not exercise this option if disallowed by Applicable Law. If you accelerate, you will give me notice. The notice of acceleration will allow me at least 21 days from the date the notice is given to pay all I owe. If I fail to timely pay all I owe, you may pursue any remedy allowed by the Loan Agreement without further notice or demand.

### 19. BORROWER'S RIGHT TO REINSTATE AFTER ACCELERATION

I have the right to stop you from enforcing the Loan Agreement any time before the earliest of:

    a.  5 days before sale of the Property under any power of sale included in the Loan Agreement;
    b.  the day required by Applicable Law for the termination of my right to reinstate; or
    c.  the entry of a judgment enforcing the Loan Agreement.

I can stop the enforcement of the Loan Agreement and reinstate the Loan Agreement if all the following conditions are met:

    a.  You are paid what I owe under the Loan Agreement as if no acceleration had occurred;
    b.  I cure any default of any promise or agreement;
    c.  You are paid all expenses allowed by Applicable Law, including reasonable attorneys' fees and other fees incurred for the purpose of protecting your interest in the Property and rights under the Loan Agreement;
    d.  I comply with any reasonable requirement to assure you that your interest in the Property will remain intact; and
    e.  I comply with any reasonable requirement to assure you that my ability to pay what I owe will remain intact.

You may require me to pay for the reinstatement in one or more of the following forms:

    a.  cash;
    b.  money order;
    c.  certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are federally insured; or
    d.  Electronic Funds Transfer.

Upon reinstatement, the Loan Agreement will remain effective as if no acceleration had occurred. However, this right to reinstate will not apply if I sell or transfer any interest in the Property without your permission.

### 20. SALE OF NOTE, CHANGE OF LOAN SERVICER, NOTICE OF GRIEVANCE, LENDER'S RIGHT TO COMPLY

A full or partial interest in the Loan Agreement can be sold one or more times without prior notice to me. The sale may result in a change of the company servicing or handling the Loan Agreement. The company servicing or handling the Loan Agreement will collect my monthly payment and will comply with other servicing conditions

Texas Purchase Money Model Security Document (Second Lien) with MERS-Page 8 of 13

Exhibit 1-1
Page 8 of 14   **Appendix 20**

required by the Loan Agreement or Applicable Law. In some cases, the company servicing or handling the Loan Agreement may change even if the Loan Agreement is not sold. If the company servicing or handling the Loan Agreement is changed, I will be given written notice of the change. The notice will state the name and address of the new company, the address to which my payments should be made, and any other information required by RESPA.

Any notice of acceleration and opportunity to cure under the Loan Agreement will satisfy the notice and opportunity to address the alleged violation provisions of this Section.

No agreement between you and me or any third party will limit your ability to comply with your duties under the Loan Agreement and the Applicable Law.

You and I are limiting all agreements so that all current or future interest or fees in connection with this Loan Agreement will not be greater than the highest amount allowed by Applicable Law.

You and I intend to conform the Loan Agreement to the provisions of Applicable Law. If any part of the Loan Agreement is in conflict with the Applicable Law, then that part will be corrected or removed. This correction will be automatic and will not require any amendment or new document. Your right to correct any violation will survive my paying off the Loan Agreement. My right to correct will override any conflicting provision of the Loan Agreement.

Your right-to-comply as provided in this Section will survive the payoff of the Loan Agreement. The provisions of this Section will supersede any inconsistent provision of the Loan Agreement.

## 21. HAZARDOUS SUBSTANCES

Hazardous Substances

   a. "Hazardous Substances" means those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials;
   b. "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection;
   c. "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and
   d. "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. I will not do, or allow anyone else to do, anything affecting the Property:

   a. that is in violation of any Environmental Law;
   b. that creates an Environmental Condition; or,
   c. that, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.

The presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and for the maintenance of the Property are allowed. This includes Hazardous Substances found in consumer products.

I will promptly give you written notice of:

   a. any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge;
   b. any Environmental Condition, including any spilling, leaking, discharge, release or threat of release of any

Exhibit 1-1
Page 9 of 14
**Appendix 21**

Hazardous Substance; and

c.   any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.

If I learn that, or am notified by any governmental or regulatory authority, or any private party that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I promptly will take all necessary remedial actions in accordance with Environmental Law.   You will have no obligation for an Environmental Cleanup.

## 22.  ACCELERATION AND REMEDIES

You will give me notice prior to acceleration if I am in default under the Loan Agreement.  The notice will specify:

a.   the default;
b.   the action required to cure the default;
c.   a date, not less than 21 days from the date you give me notice, to cure the default; and
d.   that my failure to cure the default on or before the specified date will result in acceleration of all that I owe under the Loan Agreement and sale of the Property.

You will inform me of my right to reinstate after acceleration.  If the default is not cured before the specified date, you have the option to require immediate payment in full of all I owe.  If you are not paid all I owe, you may sell the Property or seek other remedies allowed by Applicable Law without further notice.  You may collect your reasonable expenses incurred in seeking the remedies provided in this Section.  These expenses may include court costs, attorneys' fees, and costs of title search.

I understand the power of sale is not a confession of judgment or a power of attorney to confess judgment or an appearance by me in a judicial proceeding.  If the Property is sold under this section I or my successors will immediately give possession of the Property to the purchaser.  If I do not, I or anyone residing on the Property may be removed by writ of possession.

## 23.  ASSIGNMENT OF RENTS, APPOINTMENT OF RECEIVER, LENDER IN POSSESSION

As additional security, I assign to you the rents of the Property, provided that I have the right, prior to acceleration or abandonment of the Property, to collect and retain the rents as they become due.

Upon acceleration or abandonment, you, by agent or by court-appointed receiver, will be entitled to enter, take possession, manage the Property, and collect due and past due rents.  All rents you or the court-appointed receiver collect will be applied first to payment of the costs of management of the Property and collection of rents, including receiver's fees, premiums on receiver's bonds, and reasonable attorneys' fees, and then to the sums secured by this Security Document.  You and the receiver will be liable to account only for rents received.

## 24.  POWER OF SALE

You have a fully enforceable lien on the Property.  Your remedies for my default include an efficient means of foreclosure under the law.  You and the Trustee have all powers to conduct a foreclosure.  If you choose to use the power of sale, you will give me notice of the time, place and terms of the sale by posting and filing notice at least 21 days before the sale as provided by law.  You will give me notice by mail as required by law.  Failure to cure default on or before the date in the notice may result in acceleration of the amount that I owe under this Loan Agreement.  The notice will inform me of my right to reinstate after acceleration and assert in court that I am not in default or any other defense to acceleration or sale.  If I do not cure the default on or before the date in the notice, you, at your option, may declare all that I owe under this Loan Agreement to be immediately due and payable and may invoke the power of sale and any other remedies permitted by Applicable Law. The sale will be conducted at a public place. The sale will be held:

a.   on the first Tuesday of a month;
b.   at a time stated in the notice or no later than 3 hours after the time; and
c.   between 10:00 a.m. and 4:00 p.m.

Texas Purchase Money Model Security Document (Second Lien) with MERS-Page 10 of 11

Exhibit 1-1
Page 10 of 14   **Appendix 22**

I allow the Trustee to sell the Property to the highest bidder for cash in one or more pieces and in any order the Trustee determines. You may purchase the Property at any sale.

Trustee will give a Trustee's deed to the foreclosure sale purchaser. A Trustee's deed will convey:

a. good title to the Property; and
b. title with promises of general warranty from me.

I will defend the purchaser's title to the Property against all claims and demands. The description of facts contained in the Trustee's deed will be sufficient to legally prove the truth of the statements made in the deed. Trustee will apply the proceeds of the sale in the following order:

a. to all expenses of the sale, including court costs and reasonable Trustee's and attorneys' fees;
b. what I owe; and
c. any excess to the person or persons legally entitled to it.

If the Property is sold through a foreclosure sale governed by this Section, I or any person in possession of the Property through me, will give up possession of the Property without delay. A person who does not give up possession is a holdover and may be removed by a court order.

## 25. RELEASE

Upon payment of all that I owe under this Loan Agreement, you will cancel and return the Note to me and give me, in recordable form, a release of lien securing the Loan Agreement or a copy of any endorsement of the Note and assignment of the lien to a lender that is refinancing the Loan Agreement. If you cannot, you will provide me with a discharge and release of all obligation under the loan. I will pay only the cost of recording the release of lien.

## 26. LENDER'S RIGHTS AND BORROWER'S RESPONSIBILITIES

You are entitled to all rights, superior title, liens and equities owned or claimed by any grantor or holder of any liens and debts due before the signing of the Loan Agreement. You may acquire these rights by assignment or the holder may release them upon payment.

Each person who signs the Security Document is responsible for each promise and duty in the Security Document.

Unless prohibited by Applicable Law, this Section will not:

a. impair in any way the Loan Agreement or your right to collect all that I owe under the Loan Agreement;
b. affect your right to any promise or condition of the Loan Agreement.

## 27. TRUSTEES AND TRUSTEE LIABILITY

One or more Trustees acting alone or together may exercise or perform all rights, remedies and duties of the Trustee under the Loan Agreement. You may remove or change any Trustee (e.g., add one or more Trustees or appoint a successor Trustee to any Trustee). This removal or change of Trustee must be in writing and may be:

a. at your option;
b. with or without cause; and
c. by power of attorney or otherwise.

The substitute, additional or successor Trustee will receive, the title, rights, remedies, powers and duties under the Loan Agreement and Applicable Law.

Trustee may rely, upon any notice, request, consent, demand, statement or other document reasonably believed by Trustee to be valid. Trustee will not be liable for any act or omission unless the act or omission is willful.

## 28. DEFAULT

Any default of my agreements with you will be a default of this Security Document.

Texas Purchase Money Model Security Document (Second Lien) with MERS-Page 11 of 14

Exhibit 1-1
Page 11 of 14   **Appendix 23**

**29. SUBROGATION**

If I ask, you will use proceeds from the Loan Agreement to pay off all valid outstanding liens against the Property. You will then own all rights, superior titles, liens, and interests owned or claimed by any owner or holder of an outstanding lien or debt. You own these things whether the lien or debt is transferred to you or whether it is released by the holder upon payment.

**30. PARTIAL INVALIDITY**

If any portion of the sums secured by this Security Document cannot be lawfully secured, payments minus those sums will be applied first to the portions not secured. If any charge provided for in this Loan Agreement, separately or together with other charges that are considered part of this Loan Agreement, violates Applicable Law, the charge is reduced to the extent necessary to eliminate the violation. At your option, you will refund the amount of interest or other charges paid to you in excess of the amount permitted by Applicable Law to reduce the principal of the debt or apply it to reduce the principal of the debt.

**31. PURPOSE**

The funds given to me under the Note were used by me to pay part of the purchase price of the Property. The Note is primarily secured by a vendor's lien retained in the deed of even date herewith conveying the Property to me, which vendor's lien has been assigned to you, this Deed of Trust being additional security for the vendor's lien.

**REQUEST FOR NOTICE OF DEFAULT**
------------------------------------**AND FORECLOSURE UNDER SUPERIOR**------------------------------------
**MORTGAGES OR SECURITY DOCUMENTS**

You and I request that the holder of any mortgage, security document or other claim with a lien that has priority over this Security Document give you Notice, at your address listed on page 1 of this Security Document, of any default under the superior claim and of any sale or other foreclosure action.

BY SIGNING BELOW, I accept and agree to the terms and promises contained in the Loan Agreement and in any Rider I sign which is recorded with it.
(DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. I MUST RECEIVE A COPY OF ANY DOCUMENT I SIGN.)

_____     _____(Seal)
                                        KENNETH MCDOUGAL
Printed Name:_____

_____     _____(Seal)
                                        DAVIDA J. MCDOUGAL
Printed Name:_____

_____(Seal)     _____(Seal)

Texas Purchase Money Model Security Document (Second Lien) with MERS-Page 12 of 13

Exhibit 1-1
Page 12 of 14   **Appendix 24**

STATE OF TEXAS
County of _____ *Dallas* _____

This instrument was acknowledged before me on *November 13, 2003* by _____ KENNETH
MCDOUGAL and DAVIDA J. MCDOUGAL _____.


Notary Public

CECILIA FUENTES
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 10-22-2005

2003 230 03431

Texas Purchase Money Model Security Document (Second Lien) with MERS Page 13 of 13

Exhibit 1-1
Page 13 of 14   **Appendix 25**



2003 230 03432

Exhibit 1-1
Page 14 of 14   **Appendix 26**



~~RECORDING REQUESTED BY:~~
~~Mortgage Electronic Registration Systems, Inc., as~~
~~nominee for Sebring Capital Partners, Limited~~
~~Partnership, its successors and assigns.~~

PREPARED BY AND WHEN

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

MIN: ▮▮▮▮▮
MERS Phone: 1-888-679-6377
Property Address: 218 Hummingbird Lane, Duncanville, Texas 75137

**ELECTRONICALLY RECORDED  201200333842**
**11/09/2012 10:25:15 AM AL  1/2**

78140073    **ASSIGNMENT OF PURCHASE MONEY SECURITY DOCUMENT**

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to The Bank of New York Mellon Trust Company, National Association FKA The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RASC 2004-KS2 all beneficial interest under that certain Purchase Money Security Document dated November 13, 2003, executed by Kenneth McDougal , and spouse, Davida J. McDougal, to Don W. Ledbetter as trustee, for Mortgage Electronic Registration Systems, Inc., as nominee for Sebring Capital Partners, Limited Partnership, its successors and assigns, as beneficiary, and recorded as Instrument No. 2643152 and on November 20, 2003, in the State of Texas, Dallas County Recorder's Office.

Dated: _____11-5-12_____    Mortgage Electronic Registration Systems, Inc., as nominee
for Sebring Capital Partners, Limited Partnership, its
successors and assigns.
By: _Geneva Bessellieu_
Name: __Geneva Bessellieu__
Title: __Assistant Secretary__

State of __Pennsylvania__  )
County of __Montgomery__  )
On __Nov 5 2012__ before me, __Thomas J. Cunningham__, a Notary Public,
personally appeared __Geneva Bessellieu__, who proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Pennsylvania__ that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public  Thomas J. Cunningham

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
THOMAS J. CUNNINGHAM, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 1, 2016

(This Area for Official Notary Seal)

Exhibit 1-2
Page 1 of 2   **Appendix 27**

## LEGAL DESCRIPTION

LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE CITY OF DUNCANVILLE, DALLAS COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS



**Filed and Recorded**
**Official Public Records**
**John F. Warren, County Clerk**
**Dallas County, TEXAS**
**11/09/2012 10:25:15 AM**
**$20.00**
**201200333842**

 

Exhibit 1-2
Page 2 of 2   **Appendix 28**

Recording Requested By:

*Trinity Financial Services, LLC*

**When Recorded Return To:**
Trinity Financial Services, LLC (MAIN)
Kaleena Ogo
P.O. Box 458
Kimberling City, MO 65686
Ref#

<u>CORPORATE ASSIGNMENT OF DEED OF TRUST</u>

**Dallas, Texas**
**SELLER'S SERVICING #**          "MCDOUGAL"

**Record 1st**

Date of Assignment: September 18th, 2013
Assignor: OCWEN LOAN SERVICING, LLC,  ATTORNEY IN FACT FOR THE BANK OF NEW YORK MELLON
TRUST COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE, F/K/A THE BANK OF NEW YORK TRUST
COMPANY, N.A., AS TRUSTEE at 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL  33409
Assignee: OCWEN LOAN SERVICING, LLC at 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL
33409

Executed By: KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR SEBRING CAPITAL PARTNERS,
LIMITED PARTNERSHIP, ITS SUCCESSORS AND/OR ASSIGNS
Date of Deed of Trust:  11/13/2003 Recorded:  11/20/2003  in Book/Reel/Liber: 230 Page/Folio: 03419 as Instrument
No.: 2643152  In the County of Dallas, State of Texas.

Property Address: 218 HUMMINGBIRD LANE, DUNCANVILLE, TX  75137
Legal Description: As Referenced on Original Recorded Document

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust having an original principal sum of $14,300.00 with interest, secured thereby, with all moneys now owing or
that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to
the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:

   OCWEN LOAN SERVICING, LLC,  ATTORNEY IN FACT FOR THE BANK OF NEW YORK MELLON TRUST
COMPANY, NATIONAL ASSOCIATION, AS TRUSTEE, F/K/A THE BANK OF NEW YORK TRUST COMPANY, N.A.,
AS TRUSTEE
On *9-18-13*                              *RASC  2004-KS2*

By: _____
   Ann Heine                              ,
   Authorized Signer

Exhibit 1-3
Page 1 of 2
Appendix 29

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Iowa
COUNTY OF Black Hawk

On  9 - 18 - 13 , before me, TERESA OLSON, a Notary Public in and for Black Hawk in the State of Iowa,
personally appeared ___Ann Heine_____, Authorized Signer, personally known to me (or
proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity,
and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,


TERESA OLSON
Notary Expires: 07/03/2016 #779238

TERESA OLSON
COMMISSION NO.779238
MY COMMISSION EXPIRES
JULY 3, 2016

(This area for notarial seal)

**Filed and Recorded**
**Official Public Records**
**John F. Warren, County Clerk**
**Dallas County, TEXAS**
**01/22/2019 04:58:41 PM**
**$30.00**
**201900017977**



Exhibit 1-3
Page 2 of 2
**Appendix 30**

**ELECTRONICALLY RECORDED  201900017978**
**01/22/2019 04:58:42 PM AL  1/2**

**When Recorded Return To:**
Trinity Financial Services, LLC (MAIN)
Kaleena Ogo
P.O. Box 458
Kimberling City, MO 65686
Ref #[REDACTED] *A*

**CORPORATE ASSIGNMENT OF DEED OF TRUST**

**Dallas, Texas**
**SELLER'S SERVICING #** [REDACTED] "MCDOUGAL"

**Record 2nd**

Date of Assignment: September 18th, 2013
Assignor: OCWEN LOAN SERVICING, LLC at 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409
Assignee: STELIS, LLC at 2001 WESTERN AVE, SUITE 430, SEATTLE, WA 98121

Executed By: KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY AS NOMINEE FOR SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP, ITS SUCCESSORS AND/OR ASSIGNS
Date of Deed of Trust: 11/13/2003 Recorded:  11/20/2003  in Book/Reel/Liber: 230 Page/Folio: 03419 as Instrument No.: 2643152  In the County of Dallas, State of Texas.

Property Address: 218 HUMMINGBIRD LANE, DUNCANVILLE, TX  75137
Legal Description: As Referenced on Original Recorded Document

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $14,300.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

OCWEN LOAN SERVICING, LLC
On *9-18-13*

By: *[signature]*
Ann Heine
Authorized Signer

Exhibit 1-4
Page 1 of 2   **Appendix 31**

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Iowa
COUNTY OF Black Hawk

On 9-18-13, before me, TERESA OLSON, a Notary Public in and for Black Hawk in the State of Iowa, personally appeared ___Ann Heine___, Authorized Signer, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

TERESA OLSON
Notary Expires: 07/03/2016  #779238



TERESA OLSON
COMMISSION NO.779238
MY COMMISSION EXPIRES
JULY 3, 2016

(This area for notarial seal)

**Filed and Recorded**
**Official Public Records**
**John F. Warren, County Clerk**
**Dallas County, TEXAS**
**01/22/2019 04:58:42 PM**
**$30.00**
**201900017978**

Exhibit 1-4
Page 2 of 2
**Appendix 32**

ELECTRONICALLY RECORDED 201900017979
01/22/2019 04:58:43 PM AL  1/1

RECORDING REQUESTED BY:

When Recorded Return To:
Trinity Financial Services, LLC (MAIN)
Kaleena Ogo
P.O. Box 458
Kimberling City, MO 65686
Ref #: ████████████████████

Loan #: █████████████████
TS Ref # ██████

████████████████████████

## CORPORATE ASSIGNMENT OF DEED OF TRUST

TX/DALLAS

**Record 3rd**

Assignment Prepared on: March 09, 2016
**Assignor**: STELIS, LLC, at 30 WALL STREET, 6TH FLOOR, NEW YORK, NY, 10005

**Assignee:** Trinity Financial Services, LLC, at 2618 SAN MIGUEL DR., SUITE 303, NEWPORT BEACH, CA, 92660

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Deed of Trust dated 11/13/2003, in the amount of $14,300.00, executed by KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP, ITS SUCCESSORS AND ASSIGNS and Recorded: 11/20/2003, Instrument No.: 2643152, Book: 230, Page: 03419 in DALLAS County, State of TEXAS.

Property Address: 218 HUMMINGBIRD LANE, DUNCANVILLE, TX, 75137
Legal Description: As Referenced on Original Recorded Document.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

STELIS, LLC

On: 03/09/2016

Signature: _Susan Hoff_
Name:   Susan Hoff
Title:    ASSISTANT VICE PRESIDENT

State of MISSOURI
County of STONE

On 03/09/2016, before me, TONI EUTSLER, a Notary Public in and for STONE in the State of MISSOURI, personally appeared Susan Hoff, ASSISTANT VICE PRESIDENT, STELIS, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Toni Eutsler_
TONI EUTSLER
Notary Expires: 2/24/2018 / #: 14933852

TONI EUTSLER
My Commission Expires
February 24, 2018
Stone County
Commission #14933852

**TX/DALLAS**

**Filed and Recorded
Official Public Records
John F. Warren, County Clerk
Dallas County, TEXAS
01/22/2019 04:58:43 PM
$26.00
201900017979**



Exhibit 1-5
Page 1 of 1      Appendix 33

Bonial & Associates, P.C.
14841 Dallas Parkway
Suite 300
Dallas TX 75254



USPS CERTIFIED MAIL

9214 8901 9403 8380 5911 21

DAVIDA J MCDOUGAL
218 HUMMINGBIRD LN
DUNCANVILLE TX 75137-3109

Postage: $5.6000

Exhibit 1-6
Page 1 of 8   **Appendix 34**



Case ID: ███████

File: 9664-0004

Exhibit 1-6
Page 2 of 8
**Appendix 35**



**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main:  (972) 643-6600
Fax:  (972) 643-6699

**LEGAL PRECEDENT IS NOT CLEAR AS TO WHETHER THE SENDING OF THIS LETTER MAKES US A DEBT COLLECTOR.  TO THE EXTENT IT DOES, PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  HOWEVER,  IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT  TO COLLECT A DEBT OR AS AN ACT TO COLLECT,  ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

DAVIDA J MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE, TX 75137

*March 26, 2019*

Re: ██████    218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137

### NOTICE OF DEFAULT AND INTENTION TO ACCELERATE

We represent SMA Finance, LLC, affiliated with Trinity Financial Services, LLC, whose address is 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 which, if it is not the Current Mortgagee, is acting as the Mortgage Servicer and representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement concerning the Note and Deed of Trust which are associated with the above referenced loan number.

Our firm has been requested to pursue non-judicial foreclosure processing in accordance with the terms of the Note and Deed of Trust and applicable law.  As a prerequisite to exercising the contractual rights of the Note and Deed of Trust, and pursuant to the provisions of the Texas Property Code, Section 51.002, the following notices are provided to you:

1. The loan is in default for failure to make the regular monthly payments required by the Note and Deed of Trust.
2. The action required to cure the default is the payment of all sums presently due under the Note and Deed of Trust.
3. If the default is not cured by such payment within thirty (30) days of the date of this notice, without further notice or demand, the maturity date of the Note will be accelerated and all sums secured by the Deed of Trust will be declared to be immediately due and payable.  Thereafter, it is intended that the property be sold by a Substitute Trustee at a public foreclosure sale.
4. After acceleration, a curing of the default and reinstatement of the loan will be permitted prior to the time of sale by paying the past due regular monthly payments and other sums due under the Note and Deed of Trust and by complying with all terms of reinstatement.

Case ID: ██████                                                          File: 9664-0004

Exhibit 1-6
Page 3 of 8        **Appendix 36**

According to the information provided to us by our client, as of April 20, 2019, the amount required to cure the default is/was $23,773.43. Because of additional installments that may have come or become due, and other charges that may vary from day to day, the amount required to cure the default on the day you choose to pay may vary from the amount referenced above and may be greater. If you intend to cure this default, we encourage you to contact us promptly and request a reinstatement quote. This will ensure that you are in possession of an accurate figure necessary to fully resolve the default and bring your account current and a specific timeframe in which to do so. For further information, write us at Bonial & Associates, P.C., Foreclosure Department, 14841 Dallas Parkway, Suite 425, Dallas, TX 75254 or for faster service, please call us at (972) 643-6600.

Persons who are obligated on the debt evidenced by this Note and Deed of Trust or who otherwise purchased and have an interest in the property secured by the Deed of Trust are hereby given notice of the foregoing together with the following additional matters:

1. You have the right to bring a court action to assert the non-existence of a default or any other defense that may exist.
2. Legal precedent is not clear as to whether the sending of this letter makes us a debt collector. To the extent it does, please be advised that this letter is an attempt to collect a debt and any information obtained will be used for that purpose.
3. You are encouraged to send to us any information you have that suggests that the loan is not in default or that the amount of default is different from the amount indicated in this letter. Upon receipt of such information, we will be pleased to forward the information to the lender for review and further response.

We hope that this matter may be amicably resolved in a manner that is satisfactory for all parties concerned.

If you are represented by an attorney, please refer this letter to your attorney.

Very truly yours,

Bonial & Associates, P.C.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

Case ID: ███████

File: 9664-0004

Exhibit 1-6
Page 4 of 8   **Appendix 37**

Bonial & Associates, P.C.
14841 Dallas Parkway
Suite 300
Dallas TX 75254



USPS CERTIFIED MAIL

9214 8901 9403 8380 5908 89

KENNETH MCDOUGAL
218 HUMMINGBIRD LN
DUNCANVILLE TX 75137-3109



Case ID: █████

File: 9664-0004

Exhibit 1-6
Page 6 of 8
**Appendix 39**



**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main: (972) 643-6600
Fax: (972) 643-6699

**LEGAL PRECEDENT IS NOT CLEAR AS TO WHETHER THE SENDING OF THIS LETTER MAKES US A DEBT COLLECTOR. TO THE EXTENT IT DOES, PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

KENNETH MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE, TX 75137

*March 26, 2019*

Re: ███████  218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137

**NOTICE OF DEFAULT AND INTENTION TO ACCELERATE**

We represent SMA Finance, LLC, affiliated with Trinity Financial Services, LLC, whose address is 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 which, if it is not the Current Mortgagee, is acting as the Mortgage Servicer and representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement concerning the Note and Deed of Trust which are associated with the above referenced loan number.

Our firm has been requested to pursue non-judicial foreclosure processing in accordance with the terms of the Note and Deed of Trust and applicable law. As a prerequisite to exercising the contractual rights of the Note and Deed of Trust, and pursuant to the provisions of the Texas Property Code, Section 51.002, the following notices are provided to you:

1. The loan is in default for failure to make the regular monthly payments required by the Note and Deed of Trust.
2. The action required to cure the default is the payment of all sums presently due under the Note and Deed of Trust.
3. If the default is not cured by such payment within thirty (30) days of the date of this notice, without further notice or demand, the maturity date of the Note will be accelerated and all sums secured by the Deed of Trust will be declared to be immediately due and payable. Thereafter, it is intended that the property be sold by a Substitute Trustee at a public foreclosure sale.
4. After acceleration, a curing of the default and reinstatement of the loan will be permitted prior to the time of sale by paying the past due regular monthly payments and other sums due under the Note and Deed of Trust and by complying with all terms of reinstatement.

Case ID: ███████

File: 9664-0004

Exhibit 1-6
Page 7 of 8   Appendix 40

According to the information provided to us by our client, as of April 20, 2019, the amount required to cure the default is/was $23,773.43. Because of additional installments that may have come or become due, and other charges that may vary from day to day, the amount required to cure the default on the day you choose to pay may vary from the amount referenced above and may be greater. If you intend to cure this default, we encourage you to contact us promptly and request a reinstatement quote. This will ensure that you are in possession of an accurate figure necessary to fully resolve the default and bring your account current and a specific timeframe in which to do so. For further information, write us at Bonial & Associates, P.C., Foreclosure Department, 14841 Dallas Parkway, Suite 425, Dallas, TX 75254 or for faster service, please call us at (972) 643-6600.

Persons who are obligated on the debt evidenced by this Note and Deed of Trust or who otherwise purchased and have an interest in the property secured by the Deed of Trust are hereby given notice of the foregoing together with the following additional matters:

1. You have the right to bring a court action to assert the non-existence of a default or any other defense that may exist.
2. Legal precedent is not clear as to whether the sending of this letter makes us a debt collector. To the extent it does, please be advised that this letter is an attempt to collect a debt and any information obtained will be used for that purpose.
3. You are encouraged to send to us any information you have that suggests that the loan is not in default or that the amount of default is different from the amount indicated in this letter. Upon receipt of such information, we will be pleased to forward the information to the lender for review and further response.

We hope that this matter may be amicably resolved in a manner that is satisfactory for all parties concerned.

If you are represented by an attorney, please refer this letter to your attorney.

Very truly yours,

Bonial & Associates, P.C.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**



**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main:  (972) 643-6600
Fax:  (972) 643-6699

**LEGAL  PRECEDENT  IS NOT CLEAR  AS TO WHETHER THE SENDING OF THIS LETTER  MAKES US A DEBT COLLECTOR.  TO THE EXTENT IT DOES, PLEASE BE ADVISED THAT THIS IS AN ATTEMPT  TO  COLLECT  A DEBT,  AND ANY  INFORMATION  OBTAINED  WILL  BE USED FOR THAT PURPOSE.  HOWEVER,  IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY,   THIS LETTER IS FOR INFORMATIONAL   PURPOSES  ONLY  AND IS NOT INTENDED AS AN ATTEMPT  TO COLLECT  A DEBT OR AS AN ACT TO COLLECT,   ASSESS, OR RECOVER  ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY**.

**Assert and protect your rights as a member of the armed forces of the United States.  If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Via certified mail return receipt requested and first class mail

DAVIDA J MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE, TX 75137

May 30, 2019

**Re:**
**Last Four Digits of the Loan No:** ▮▮▮▮
**Property:** 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137

We represent Trinity Financial Services, LLC, whose address is 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 which, if it is not the Current Mortgagee, is acting as the Mortgage Servicer and representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement concerning the Note and Deed of Trust which are associated with the above referenced loan number.

Our firm has been requested to pursue non-judicial foreclosure processing in accordance with the terms of the Note and Deed of Trust and applicable law.  Consistent therewith, the following notices are provided to you:

1. The maturity date of the Note has been accelerated, all sums secured by the Deed of Trust have been declared to be immediately due and payable and an enforcement of the Power of Sale Clause in the Deed of Trust which provides for the sale of the above-referenced property at a public foreclosure sale in the time and manner permitted by law has been requested.

2. Pursuant to that request, the property has been scheduled for foreclosure sale on Tuesday, the 2nd day of July, 2019 between the hours of 10:00A.M. and 4:00P.M. At  AT THE AREA OUTSIDE ON THE NORTH SIDE OF  THE  GEORGE  ALLEN  COURTS  BUILDING  FACING  COMMERCE  STREET  BELOW  THE OVERHANG of Dallas County Texas.  If the preceding area is no longer the designated area, the place of sale will be at the area most recently designated by the Dallas County Commissioner's Court.  This sale shall commence at 10:00 AM or within three hours thereafter.  The property will be sold to the highest bidder for cash.

TXNOS                                     Pg. 2                    ▮▮▮▮▮▮▮▮▮▮

Exhibit 1-7
Page 1 of 33
Appendix 42

Attached for your further review is a copy of the Notice of Acceleration and Notice of Trustee's Sale which has been or will be filed with the Dallas County Clerk and posted at the courthouse door or other location designated by the County Commissioners.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 2 of 33
**Appendix 43**

**DEED OF TRUST INFORMATION:**

|  |  |
|---|---|
| **Date**: | 11/13/2003 |
| **Grantor(s)**: | KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL |
| **Original Mortgagee**: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP, ITS SUCCESSORS AND ASSIGNS |
| **Original Principal**: | $14,300.00 |
| **Recording Information**: | Book 2003230 Page 03419 Instrument 2643152 |
| **Property County**: | Dallas |
| **Property**: | LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE CITY OF DUNCANVILLE, DALLAS COUNTY,TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS |
| **Reported Address**: | 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137 |

**MORTGAGE SERVICING INFORMATION:**

The Mortgage Servicer, if not the Current Mortgagee, is representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement.

|  |  |
|---|---|
| **Current Mortgagee**: | Trinity Financial Services LLC |
| **Mortgage Servicer**: | Trinity Financial Services, LLC |
| **Current Beneficiary**: | Trinity Financial Services LLC |
| **Mortgage Servicer Address**: | 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 |

**SALE INFORMATION:**

|  |  |
|---|---|
| **Date of Sale**: | Tuesday, the 2nd day of July, 2019 |
| **Time of Sale**: | 10:00 AM or within three hours thereafter. |
| **Place of Sale**: | AT THE AREA OUTSIDE ON THE NORTH SIDE OF THE GEORGE ALLEN COURTS BUILDING FACING COMMERCE STREET BELOW THE OVERHANG in Dallas County, Texas, or, if the preceding area is no longer the designated area, at the area most recently designated by the Dallas County Commissioner's Court. |
| **Substitute Trustee(s)**: | Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act |
| **Substitute Trustee Address**: | 14841 Dallas Parkway, Suite 425, Dallas, TX 75254 |

WHEREAS, the above-named Grantor previously conveyed the above described property in trust to secure payment of the Note set forth in the above-described Deed of Trust; and

WHEREAS, a default under the Note and Deed of Trust was declared; such default was reported to not have been cured; and all sums secured by such Deed of Trust were declared to be immediately due and payable; and

WHEREAS, the original Trustee and any previously appointed Substitute Trustee has been removed and Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, have been appointed as Substitute Trustees and requested to sell the Property to satisfy the indebtedness; and

WHEREAS, the undersigned law firm has been requested to provide these notices on behalf of the Current Mortgagee, Mortgage Servicer and Substitute Trustees;

NOW, THEREFORE, NOTICE IS HEREBY GIVEN of the foregoing matters and that:

1. The maturity of the Note has been accelerated and all sums secured by the Deed of Trust have been declared to be immediately due and payable.

2. Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, as Substitute Trustee will sell the Property to the highest bidder for cash on the date, at the place, and no earlier than the time set forth above in the Sale Information section of this notice. The sale will begin within three hours after that time.

3. This sale shall be subject to any legal impediments to the sale of the Property and to any exceptions referenced in the Deed of Trust or appearing of record to the extent the same are still in effect and shall not cover any property that has been released from the lien of the Deed of Trust.

Exhibit 1-7
Page 3 of 33   **Appendix 44**

4.  No warranties, express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose shall be conveyed at the sale, save and except the Grantor's warranties specifically authorized by the Grantor in the Deed of Trust.  The property shall be offered "AS-IS",   purchasers will buy the property "at the purchaser's own risk" and "at his peril", and no representation is made concerning the quality or nature of title to be acquired.  Purchasers will receive whatever interest Grantor and Grantor's assigns have in the property, subject to any liens or interests of any kind that may survive the sale.  Interested persons are encouraged to consult counsel of their choice prior to participating in the sale of the property.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 4 of 33   **Appendix 45**



Pg. 1

Exhibit 1-7
Page 5 of 33
**Appendix 46**



BONIAL & ASSOCIATES, P.C.

**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main:  (972) 643-6600
Fax:  (972) 643-6699

**LEGAL  PRECEDENT  IS NOT CLEAR  AS TO WHETHER THE SENDING OF THIS LETTER  MAKES US A DEBT COLLECTOR.  TO THE EXTENT IT DOES, PLEASE BE ADVISED THAT THIS IS AN ATTEMPT  TO  COLLECT  A DEBT,  AND ANY  INFORMATION  OBTAINED  WILL  BE USED FOR THAT PURPOSE.  HOWEVER,   IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY,     THIS LETTER IS FOR INFORMATIONAL   PURPOSES ONLY  AND IS NOT INTENDED AS AN ATTEMPT  TO COLLECT  A DEBT OR AS AN ACT TO COLLECT,   ASSESS, OR RECOVER  ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY**.

**Assert and protect your rights as a member of the armed forces of the United States.  If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Via certified mail return receipt requested and first class mail

KENNETH MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE, TX 75137

May 30, 2019

**Re:**
**Last Four Digits of the Loan No:** ███
**Property:** 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137

We represent Trinity Financial Services, LLC, whose address is 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 which, if it is not the Current Mortgagee, is acting as the Mortgage Servicer and representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement concerning the Note and Deed of Trust which are associated with the above referenced loan number.

Our firm has been requested to pursue non-judicial foreclosure processing in accordance with the terms of the Note and Deed of Trust and applicable law.  Consistent therewith, the following notices are provided to you:

1. The maturity date of the Note has been accelerated, all sums secured by the Deed of Trust have been declared to be immediately due and payable and an enforcement of the Power of Sale Clause in the Deed of Trust which provides for the sale of the above-referenced property at a public foreclosure sale in the time and manner permitted by law has been requested.
2. Pursuant to that request, the property has been scheduled for foreclosure sale on Tuesday, the 2nd day of July, 2019 between the hours of 10:00A.M. and 4:00P.M. At  AT THE AREA OUTSIDE ON THE NORTH SIDE OF  THE  GEORGE  ALLEN  COURTS  BUILDING  FACING  COMMERCE  STREET  BELOW  THE OVERHANG of Dallas County Texas.  If the preceding area is no longer the designated area, the place of sale will be at the area most recently designated by the Dallas County Commissioner's Court.  This sale shall commence at 10:00 AM or within three hours thereafter.  The property will be sold to the highest bidder for cash.

TXNOS                                                    Pg. 2                                         ██████████

Exhibit 1-7
Page 6 of 33
**Appendix 47**

Attached for your further review is a copy of the Notice of Acceleration and Notice of Trustee's Sale which has been or will be filed with the Dallas County Clerk and posted at the courthouse door or other location designated by the County Commissioners.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 7 of 33
**Appendix 48**

## DEED OF TRUST INFORMATION:

| | |
|---|---|
| **Date**: | 11/13/2003 |
| **Grantor(s)**: | KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL |
| **Original Mortgagee**: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP, ITS SUCCESSORS AND ASSIGNS |
| **Original Principal**: | $14,300.00 |
| **Recording Information**: | Book 2003230 Page 03419 Instrument 2643152 |
| **Property County**: | Dallas |
| **Property**: | LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE CITY OF DUNCANVILLE, DALLAS COUNTY,TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS |
| **Reported Address**: | 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137 |

## MORTGAGE SERVICING INFORMATION:

The Mortgage Servicer, if not the Current Mortgagee, is representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement.

| | |
|---|---|
| **Current Mortgagee**: | Trinity Financial Services LLC |
| **Mortgage Servicer**: | Trinity Financial Services, LLC |
| **Current Beneficiary**: | Trinity Financial Services LLC |
| **Mortgage Servicer Address**: | 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 |

## SALE INFORMATION:

| | |
|---|---|
| **Date of Sale**: | Tuesday, the 2nd day of July, 2019 |
| **Time of Sale**: | 10:00 AM or within three hours thereafter. |
| **Place of Sale**: | AT THE AREA OUTSIDE ON THE NORTH SIDE OF THE GEORGE ALLEN COURTS BUILDING FACING COMMERCE STREET BELOW THE OVERHANG in Dallas County, Texas, or, if the preceding area is no longer the designated area, at the area most recently designated by the Dallas County Commissioner's Court. |
| **Substitute Trustee(s)**: | Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act |
| **Substitute Trustee Address**: | 14841 Dallas Parkway, Suite 425, Dallas, TX 75254 |

WHEREAS, the above-named Grantor previously conveyed the above described property in trust to secure payment of the Note set forth in the above-described Deed of Trust; and

WHEREAS, a default under the Note and Deed of Trust was declared; such default was reported to not have been cured; and all sums secured by such Deed of Trust were declared to be immediately due and payable; and

WHEREAS, the original Trustee and any previously appointed Substitute Trustee has been removed and Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, have been appointed as Substitute Trustees and requested to sell the Property to satisfy the indebtedness; and

WHEREAS, the undersigned law firm has been requested to provide these notices on behalf of the Current Mortgagee, Mortgage Servicer and Substitute Trustees;

NOW, THEREFORE, NOTICE IS HEREBY GIVEN of the foregoing matters and that:

1. The maturity of the Note has been accelerated and all sums secured by the Deed of Trust have been declared to be immediately due and payable.

2. Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, as Substitute Trustee will sell the Property to the highest bidder for cash on the date, at the place, and no earlier than the time set forth above in the Sale Information section of this notice. The sale will begin within three hours after that time.

3. This sale shall be subject to any legal impediments to the sale of the Property and to any exceptions referenced in the Deed of Trust or appearing of record to the extent the same are still in effect and shall not cover any property that has been released from the lien of the Deed of Trust.

Exhibit 1-7
Page 8 of 33   **Appendix 49**

4. No warranties, express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose shall be conveyed at the sale, save and except the Grantor's warranties specifically authorized by the Grantor in the Deed of Trust. The property shall be offered "AS-IS", purchasers will buy the property "at the purchaser's own risk" and "at his peril", and no representation is made concerning the quality or nature of title to be acquired. Purchasers will receive whatever interest Grantor and Grantor's assigns have in the property, subject to any liens or interests of any kind that may survive the sale. Interested persons are encouraged to consult counsel of their choice prior to participating in the sale of the property.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 9 of 33   **Appendix 50**

Bonial & Associates, P.C.
14841 Dallas Parkway
Suite 300
Dallas TX 75254



**USPS CERTIFIED MAIL**

9214 8901 9403 8300 0083 9804 72

DAVIDA J MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE TX 75137

Both

Exhibit 1-7
Page 10 of 33   **Appendix 51**



Exhibit 1-7
Page 11 of 33
**Appendix 52**



**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main:  (972) 643-6600
Fax:  (972) 643-6699

**LEGAL  PRECEDENT  IS NOT CLEAR  AS TO WHETHER THE SENDING OF THIS LETTER  MAKES US A DEBT COLLECTOR.  TO THE EXTENT IT DOES, PLEASE BE ADVISED THAT THIS IS AN ATTEMPT  TO  COLLECT  A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  HOWEVER,  IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY,   THIS LETTER IS FOR INFORMATIONAL  PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT  TO COLLECT  A DEBT OR AS AN ACT TO COLLECT,   ASSESS, OR RECOVER  ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY**.

**Assert and protect your rights as a member of the armed forces of the United States.  If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Via certified mail return receipt requested and first class mail

DAVIDA J MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE, TX 75137

May 30, 2019

**Re:**
**Last Four Digits of the Loan No:** ███
**Property:** 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137

We represent Trinity Financial Services, LLC, whose address is 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 which, if it is not the Current Mortgagee, is acting as the Mortgage Servicer and representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement concerning the Note and Deed of Trust which are associated with the above referenced loan number.

Our firm has been requested to pursue non-judicial foreclosure processing in accordance with the terms of the Note and Deed of Trust and applicable law.  Consistent therewith, the following notices are provided to you:

1. The maturity date of the Note has been accelerated, all sums secured by the Deed of Trust have been declared to be immediately due and payable and an enforcement of the Power of Sale Clause in the Deed of Trust which provides for the sale of the above-referenced property at a public foreclosure sale in the time and manner permitted by law has been requested.
2. Pursuant to that request, the property has been scheduled for foreclosure sale on Tuesday, the 2nd day of July, 2019 between the hours of 10:00A.M. and 4:00P.M. At  AT THE AREA OUTSIDE ON THE NORTH SIDE OF  THE GEORGE ALLEN COURTS BUILDING FACING COMMERCE STREET BELOW THE OVERHANG of Dallas County Texas.  If the preceding area is no longer the designated area, the place of sale will be at the area most recently designated by the Dallas County Commissioner's Court.  This sale shall commence at 10:00 AM or within three hours thereafter.  The property will be sold to the highest bidder for cash.

TXNOS                                  Pg. 2                                  ███████

███

Exhibit 1-7
Page 12 of 33  **Appendix 53**

Attached for your further review is a copy of the Notice of Acceleration and Notice of Trustee's Sale which has been or will be filed with the Dallas County Clerk and posted at the courthouse door or other location designated by the County Commissioners.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 13 of 33
**Appendix 54**

# NOTICE OF ACCELERATION AND NOTICE OF TRUSTEE'S SALE

## DEED OF TRUST INFORMATION:

| | |
|---|---|
| **Date**: | 11/13/2003 |
| **Grantor(s)**: | KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL |
| **Original Mortgagee**: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP, ITS SUCCESSORS AND ASSIGNS |
| **Original Principal**: | $14,300.00 |
| **Recording Information**: | Book 2003230 Page 03419 Instrument 2643152 |
| **Property County**: | Dallas |
| **Property**: | LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE CITY OF DUNCANVILLE, DALLAS COUNTY,TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS |
| **Reported Address**: | 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137 |

## MORTGAGE SERVICING INFORMATION:

The Mortgage Servicer, if not the Current Mortgagee, is representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement.

| | |
|---|---|
| **Current Mortgagee**: | Trinity Financial Services LLC |
| **Mortgage Servicer**: | Trinity Financial Services, LLC |
| **Current Beneficiary**: | Trinity Financial Services LLC |
| **Mortgage Servicer Address**: | 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 |

## SALE INFORMATION:

| | |
|---|---|
| **Date of Sale**: | Tuesday, the 2nd day of July, 2019 |
| **Time of Sale**: | 10:00 AM or within three hours thereafter. |
| **Place of Sale**: | AT THE AREA OUTSIDE ON THE NORTH SIDE OF THE GEORGE ALLEN COURTS BUILDING FACING COMMERCE STREET BELOW THE OVERHANG in Dallas County, Texas, or, if the preceding area is no longer the designated area, at the area most recently designated by the Dallas County Commissioner's Court. |
| **Substitute Trustee(s)**: | Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act |
| **Substitute Trustee Address**: | 14841 Dallas Parkway, Suite 425, Dallas, TX 75254 |

WHEREAS, the above-named Grantor previously conveyed the above described property in trust to secure payment of the Note set forth in the above-described Deed of Trust; and

WHEREAS, a default under the Note and Deed of Trust was declared; such default was reported to not have been cured; and all sums secured by such Deed of Trust were declared to be immediately due and payable; and

WHEREAS, the original Trustee and any previously appointed Substitute Trustee has been removed and Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, have been appointed as Substitute Trustees and requested to sell the Property to satisfy the indebtedness; and

WHEREAS, the undersigned law firm has been requested to provide these notices on behalf of the Current Mortgagee, Mortgage Servicer and Substitute Trustees;

NOW, THEREFORE, NOTICE IS HEREBY GIVEN of the foregoing matters and that:

1. The maturity of the Note has been accelerated and all sums secured by the Deed of Trust have been declared to be immediately due and payable.

2. Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, as Substitute Trustee will sell the Property to the highest bidder for cash on the date, at the place, and no earlier than the time set forth above in the Sale Information section of this notice. The sale will begin within three hours after that time.

3. This sale shall be subject to any legal impediments to the sale of the Property and to any exceptions referenced in the Deed of Trust or appearing of record to the extent the same are still in effect and shall not cover any property that has been released from the lien of the Deed of Trust.

Exhibit 1-7
Page 14 of 33   **Appendix 55**

4.   No warranties, express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose shall be conveyed at the sale, save and except the Grantor's warranties specifically authorized by the Grantor in the Deed of Trust.  The property shall be offered "AS-IS",   purchasers will buy the property "at the purchaser's own risk" and "at his peril", and no representation is made concerning the quality or nature of title to be acquired.  Purchasers will receive whatever interest Grantor and Grantor's assigns have in the property, subject to any liens or interests of any kind that may survive the sale.  Interested persons are encouraged to consult counsel of their choice prior to participating in the sale of the property.


Very truly yours,

Bonial & Associates, P.C.

TXNOS                               Pg. 5

Exhibit 1-7
Page 15 of 33
**Appendix 56**

Bonial & Associates, P.C.
14841 Dallas Parkway
Suite 300
Dallas TX 75254

DAVIDA JMCDOUGALDOUGAL
218 HUMMINGBIRD LANERD LANE
DUNCANVILLE TX 751137TX 75137

Both

Both

Exhibit 1-7
Page 16 of 33
**Appendix 57**



**BONIAL & ASSOCIATES, P.C.**

**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main: (972) 643-6600
Fax: (972) 643-6699

**LEGAL PRECEDENT IS NOT CLEAR AS TO WHETHER THE SENDING OF THIS LETTER MAKES US A DEBT COLLECTOR. TO THE EXTENT IT DOES, PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.**

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Via certified mail return receipt requested and first class mail

DAVIDA J MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE, TX 75137

May 30, 2019

**Re:**
**Last Four Digits of the Loan No:** ████
**Property:** 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137

We represent Trinity Financial Services, LLC, whose address is 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 which, if it is not the Current Mortgagee, is acting as the Mortgage Servicer and representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement concerning the Note and Deed of Trust which are associated with the above referenced loan number.

Our firm has been requested to pursue non-judicial foreclosure processing in accordance with the terms of the Note and Deed of Trust and applicable law. Consistent therewith, the following notices are provided to you:

1. The maturity date of the Note has been accelerated, all sums secured by the Deed of Trust have been declared to be immediately due and payable and an enforcement of the Power of Sale Clause in the Deed of Trust which provides for the sale of the above-referenced property at a public foreclosure sale in the time and manner permitted by law has been requested.
2. Pursuant to that request, the property has been scheduled for foreclosure sale on Tuesday, the 2nd day of July, 2019 between the hours of 10:00A.M. and 4:00P.M. At AT THE AREA OUTSIDE ON THE NORTH SIDE OF THE GEORGE ALLEN COURTS BUILDING FACING COMMERCE STREET BELOW THE OVERHANG of Dallas County Texas. If the preceding area is no longer the designated area, the place of sale will be at the area most recently designated by the Dallas County Commissioner's Court. This sale shall commence at 10:00 AM or within three hours thereafter. The property will be sold to the highest bidder for cash.

████████

Exhibit 1-7
Page 18 of 33   **Appendix 59**



Exhibit 1-7
Page 17 of 33   Appendix 58

Attached for your further review is a copy of the Notice of Acceleration and Notice of Trustee's Sale which has been or will be filed with the Dallas County Clerk and posted at the courthouse door or other location designated by the County Commissioners.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 19 of 33
Appendix 60

# NOTICE OF ACCELERATION AND NOTICE OF TRUSTEE'S SALE

## DEED OF TRUST INFORMATION:

| | |
|---|---|
| **Date**: | 11/13/2003 |
| **Grantor(s)**: | KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL |
| **Original Mortgagee**: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP, ITS SUCCESSORS AND ASSIGNS |
| **Original Principal**: | $14,300.00 |
| **Recording Information**: | Book 2003230 Page 03419 Instrument 2643152 |
| **Property County**: | Dallas |
| **Property**: | LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE CITY OF DUNCANVILLE, DALLAS COUNTY,TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS |
| **Reported Address**: | 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137 |

## MORTGAGE SERVICING INFORMATION:

The Mortgage Servicer, if not the Current Mortgagee, is representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement.

| | |
|---|---|
| **Current Mortgagee**: | Trinity Financial Services LLC |
| **Mortgage Servicer**: | Trinity Financial Services, LLC |
| **Current Beneficiary**: | Trinity Financial Services LLC |
| **Mortgage Servicer Address**: | 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 |

## SALE INFORMATION:

| | |
|---|---|
| **Date of Sale**: | Tuesday, the 2nd day of July, 2019 |
| **Time of Sale**: | 10:00 AM or within three hours thereafter. |
| **Place of Sale**: | AT THE AREA OUTSIDE ON THE NORTH SIDE OF THE GEORGE ALLEN COURTS BUILDING FACING COMMERCE STREET BELOW THE OVERHANG in Dallas County, Texas, or, if the preceding area is no longer the designated area, at the area most recently designated by the Dallas County Commissioner's Court. |
| **Substitute Trustee(s)**: | Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act |
| **Substitute Trustee Address**: | 14841 Dallas Parkway, Suite 425, Dallas, TX 75254 |

WHEREAS, the above-named Grantor previously conveyed the above described property in trust to secure payment of the Note set forth in the above-described Deed of Trust; and

WHEREAS, a default under the Note and Deed of Trust was declared; such default was reported to not have been cured; and all sums secured by such Deed of Trust were declared to be immediately due and payable; and

WHEREAS, the original Trustee and any previously appointed Substitute Trustee has been removed and Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, have been appointed as Substitute Trustees and requested to sell the Property to satisfy the indebtedness; and

WHEREAS, the undersigned law firm has been requested to provide these notices on behalf of the Current Mortgagee, Mortgage Servicer and Substitute Trustees;

NOW, THEREFORE, NOTICE IS HEREBY GIVEN of the foregoing matters and that:

1. The maturity of the Note has been accelerated and all sums secured by the Deed of Trust have been declared to be immediately due and payable.

2. Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, as Substitute Trustee will sell the Property to the highest bidder for cash on the date, at the place, and no earlier than the time set forth above in the Sale Information section of this notice. The sale will begin within three hours after that time.

3. This sale shall be subject to any legal impediments to the sale of the Property and to any exceptions referenced in the Deed of Trust or appearing of record to the extent the same are still in effect and shall not cover any property that has been released from the lien of the Deed of Trust.

Exhibit 1-7
Page 20 of 33
**Appendix 61**

4.   No warranties, express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose shall be conveyed at the sale, save and except the Grantor's warranties specifically authorized by the Grantor in the Deed of Trust.  The property shall be offered "AS-IS",   purchasers will buy the property "at the purchaser's own risk" and "at his peril", and no representation is made concerning the quality or nature of title to be acquired.  Purchasers will receive whatever interest Grantor and Grantor's assigns have in the property, subject to any liens or interests of any kind that may survive the sale.  Interested persons are encouraged to consult counsel of their choice prior to participating in the sale of the property.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 21 of 33
**Appendix 62**

Bonial & Associates, P.C.
14841 Dallas Parkway
Suite 300
Dallas TX 75254



KENNETH MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE TX 75137

Both

Exhibit 1-7
Page 22 of 33
**Appendix 63**



TXNOS                                    Pg. 1

Exhibit 1-7
Page 23 of 33
Appendix 64



**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main:  (972) 643-6600
Fax:  (972) 643-6699

**LEGAL  PRECEDENT  IS NOT CLEAR  AS TO WHETHER THE SENDING OF THIS LETTER  MAKES US A DEBT COLLECTOR.  TO THE EXTENT IT DOES, PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO  COLLECT  A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  HOWEVER,   IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY,   THIS LETTER IS FOR INFORMATIONAL   PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT  TO COLLECT  A DEBT OR AS AN ACT TO COLLECT,   ASSESS, OR RECOVER  ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY**.

**Assert and protect your rights as a member of the armed forces of the United States.  If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Via certified mail return receipt requested and first class mail

KENNETH MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE, TX 75137

May 30, 2019

**Re:**
**Last Four Digits of the Loan No:** ■
**Property:** 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137

We represent Trinity Financial Services, LLC, whose address is 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 which, if it is not the Current Mortgagee, is acting as the Mortgage Servicer and representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement concerning the Note and Deed of Trust which are associated with the above referenced loan number.

Our firm has been requested to pursue non-judicial foreclosure processing in accordance with the terms of the Note and Deed of Trust and applicable law.  Consistent therewith, the following notices are provided to you:

1. The maturity date of the Note has been accelerated, all sums secured by the Deed of Trust have been declared to be immediately due and payable and an enforcement of the Power of Sale Clause in the Deed of Trust which provides for the sale of the above-referenced property at a public foreclosure sale in the time and manner permitted by law has been requested.
2. Pursuant to that request, the property has been scheduled for foreclosure sale on Tuesday, the 2nd day of July, 2019 between the hours of 10:00A.M. and 4:00P.M. At  AT THE AREA OUTSIDE ON THE NORTH SIDE OF  THE  GEORGE  ALLEN  COURTS  BUILDING  FACING  COMMERCE  STREET  BELOW  THE OVERHANG of Dallas County Texas.  If the preceding area is no longer the designated area, the place of sale will be at the area most recently designated by the Dallas County Commissioner's Court.  This sale shall commence at 10:00 AM or within three hours thereafter.  The property will be sold to the highest bidder for cash.

TXNOS                                                    Pg. 2                                    ████████████████

Exhibit 1-7
Page 24 of 33   **Appendix 65**

Attached for your further review is a copy of the Notice of Acceleration and Notice of Trustee's Sale which has been or will be filed with the Dallas County Clerk and posted at the courthouse door or other location designated by the County Commissioners.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 25 of 33
**Appendix 66**

## DEED OF TRUST INFORMATION:

| | |
|---|---|
| **Date**: | 11/13/2003 |
| **Grantor(s)**: | KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL |
| **Original Mortgagee**: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP, ITS SUCCESSORS AND ASSIGNS |
| **Original Principal**: | $14,300.00 |
| **Recording Information**: | Book 2003230 Page 03419 Instrument 2643152 |
| **Property County**: | Dallas |
| **Property**: | LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE CITY OF DUNCANVILLE, DALLAS COUNTY,TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS |
| **Reported Address**: | 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137 |

## MORTGAGE SERVICING INFORMATION:

The Mortgage Servicer, if not the Current Mortgagee, is representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement.

| | |
|---|---|
| **Current Mortgagee**: | Trinity Financial Services LLC |
| **Mortgage Servicer**: | Trinity Financial Services, LLC |
| **Current Beneficiary**: | Trinity Financial Services LLC |
| **Mortgage Servicer Address**: | 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 |

## SALE INFORMATION:

| | |
|---|---|
| **Date of Sale**: | Tuesday, the 2nd day of July, 2019 |
| **Time of Sale**: | 10:00 AM or within three hours thereafter. |
| **Place of Sale**: | AT THE AREA OUTSIDE ON THE NORTH SIDE OF THE GEORGE ALLEN COURTS BUILDING FACING COMMERCE STREET BELOW THE OVERHANG in Dallas County, Texas, or, if the preceding area is no longer the designated area, at the area most recently designated by the Dallas County Commissioner's Court. |
| **Substitute Trustee(s)**: | Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act |
| **Substitute Trustee Address**: | 14841 Dallas Parkway, Suite 425, Dallas, TX 75254 |

WHEREAS, the above-named Grantor previously conveyed the above described property in trust to secure payment of the Note set forth in the above-described Deed of Trust; and

WHEREAS, a default under the Note and Deed of Trust was declared; such default was reported to not have been cured; and all sums secured by such Deed of Trust were declared to be immediately due and payable; and

WHEREAS, the original Trustee and any previously appointed Substitute Trustee has been removed and Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, have been appointed as Substitute Trustees and requested to sell the Property to satisfy the indebtedness; and

WHEREAS, the undersigned law firm has been requested to provide these notices on behalf of the Current Mortgagee, Mortgage Servicer and Substitute Trustees;

NOW, THEREFORE, NOTICE IS HEREBY GIVEN of the foregoing matters and that:

1. The maturity of the Note has been accelerated and all sums secured by the Deed of Trust have been declared to be immediately due and payable.

2. Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, as Substitute Trustee will sell the Property to the highest bidder for cash on the date, at the place, and no earlier than the time set forth above in the Sale Information section of this notice. The sale will begin within three hours after that time.

3. This sale shall be subject to any legal impediments to the sale of the Property and to any exceptions referenced in the Deed of Trust or appearing of record to the extent the same are still in effect and shall not cover any property that has been released from the lien of the Deed of Trust.

Exhibit 1-7
Page 26 of 33     **Appendix 67**

4.  No warranties, express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose shall be conveyed at the sale, save and except the Grantor's warranties specifically authorized by the Grantor in the Deed of Trust.  The property shall be offered "AS-IS",   purchasers will buy the property "at the purchaser's own risk" and "at his peril", and no representation is made concerning the quality or nature of title to be acquired.  Purchasers will receive whatever interest Grantor and Grantor's assigns have in the property, subject to any liens or interests of any kind that may survive the sale.  Interested persons are encouraged to consult counsel of their choice prior to participating in the sale of the property.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 27 of 33
**Appendix 68**

Bonial & Associates, P.C.
14841 Dallas Parkway
Suite 300
Dallas TX 75254

KENNETH MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE TX 75137

Both

Both

Exhibit 1-7
Page 28 of 33
Appendix 69



Exhibit 1-7
Page 29 of 33
**Appendix 70**



**Bonial & Associates, P.C.**
14841 Dallas Parkway, Suite 425
Dallas, TX 75254
Main:  (972) 643-6600
Fax:  (972) 643-6699

**LEGAL  PRECEDENT  IS NOT CLEAR  AS TO WHETHER THE SENDING OF THIS LETTER  MAKES US A DEBT COLLECTOR.  TO THE EXTENT IT DOES, PLEASE BE ADVISED THAT THIS IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  HOWEVER,  IF YOU ARE IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY,    THIS LETTER IS FOR INFORMATIONAL   PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT  TO COLLECT  A DEBT OR AS AN ACT TO COLLECT,   ASSESS, OR RECOVER  ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY**.

**Assert and protect your rights as a member of the armed forces of the United States.  If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

Via certified mail return receipt requested and first class mail

KENNETH MCDOUGAL
218 HUMMINGBIRD LANE
DUNCANVILLE, TX 75137

May 30, 2019

**Re:**
**Last Four Digits of the Loan No:** ███
**Property:** 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137

We represent Trinity Financial Services, LLC, whose address is 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 which, if it is not the Current Mortgagee, is acting as the Mortgage Servicer and representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement concerning the Note and Deed of Trust which are associated with the above referenced loan number.

Our firm has been requested to pursue non-judicial foreclosure processing in accordance with the terms of the Note and Deed of Trust and applicable law.  Consistent therewith, the following notices are provided to you:

1.  The maturity date of the Note has been accelerated, all sums secured by the Deed of Trust have been declared to be immediately due and payable and an enforcement of the Power of Sale Clause in the Deed of Trust which provides for the sale of the above-referenced property at a public foreclosure sale in the time and manner permitted by law has been requested.
2.  Pursuant to that request, the property has been scheduled for foreclosure sale on Tuesday, the 2nd day of July, 2019 between the hours of 10:00A.M. and 4:00P.M. At  AT THE AREA OUTSIDE ON THE NORTH SIDE OF  THE  GEORGE  ALLEN  COURTS  BUILDING  FACING  COMMERCE  STREET  BELOW  THE OVERHANG of Dallas County Texas.  If the preceding area is no longer the designated area, the place of sale will be at the area most recently designated by the Dallas County Commissioner's Court.  This sale shall commence at 10:00 AM or within three hours thereafter.  The property will be sold to the highest bidder for cash.

Exhibit 1-7
Page 30 of 33   **Appendix 71**

Attached for your further review is a copy of the Notice of Acceleration and Notice of Trustee's Sale which has been or will be filed with the Dallas County Clerk and posted at the courthouse door or other location designated by the County Commissioners.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 31 of 33
**Appendix 72**

**NOTICE OF ACCELERATION AND NOTICE OF TRUSTEE'S SALE**

**DEED OF TRUST INFORMATION:**

| | |
|---|---|
| **Date**: | 11/13/2003 |
| **Grantor(s)**: | KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL |
| **Original Mortgagee**: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP, ITS SUCCESSORS AND ASSIGNS |
| **Original Principal**: | $14,300.00 |
| **Recording Information**: | Book 2003230 Page 03419 Instrument 2643152 |
| **Property County**: | Dallas |
| **Property**: | LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE CITY OF DUNCANVILLE, DALLAS COUNTY,TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS |
| **Reported Address**: | 218 HUMMINGBIRD LANE, DUNCANVILLE, TX 75137 |

**MORTGAGE SERVICING INFORMATION:**

The Mortgage Servicer, if not the Current Mortgagee, is representing the Current Mortgagee pursuant to a Mortgage Servicing Agreement.

| | |
|---|---|
| **Current Mortgagee**: | Trinity Financial Services LLC |
| **Mortgage Servicer**: | Trinity Financial Services, LLC |
| **Current Beneficiary**: | Trinity Financial Services LLC |
| **Mortgage Servicer Address**: | 2618 San Miguel Road, Suite 303, Newport Beach, CA 92660 |

**SALE INFORMATION:**

| | |
|---|---|
| **Date of Sale**: | Tuesday, the 2nd day of July, 2019 |
| **Time of Sale**: | 10:00 AM or within three hours thereafter. |
| **Place of Sale**: | AT THE AREA OUTSIDE ON THE NORTH SIDE OF THE GEORGE ALLEN COURTS BUILDING FACING COMMERCE STREET BELOW THE OVERHANG in Dallas County, Texas, or, if the preceding area is no longer the designated area, at the area most recently designated by the Dallas County Commissioner's Court. |
| **Substitute Trustee(s)**: | Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act |
| **Substitute Trustee Address**: | 14841 Dallas Parkway, Suite 425, Dallas, TX 75254 |

WHEREAS, the above-named Grantor previously conveyed the above described property in trust to secure payment of the Note set forth in the above-described Deed of Trust; and

WHEREAS, a default under the Note and Deed of Trust was declared; such default was reported to not have been cured; and all sums secured by such Deed of Trust were declared to be immediately due and payable; and

WHEREAS, the original Trustee and any previously appointed Substitute Trustee has been removed and Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, have been appointed as Substitute Trustees and requested to sell the Property to satisfy the indebtedness; and

WHEREAS, the undersigned law firm has been requested to provide these notices on behalf of the Current Mortgagee, Mortgage Servicer and Substitute Trustees;

NOW, THEREFORE, NOTICE IS HEREBY GIVEN of the foregoing matters and that:

1. The maturity of the Note has been accelerated and all sums secured by the Deed of Trust have been declared to be immediately due and payable.

2. Shelley Ortolani, Michele Hreha, Mary Mancuso, Francesca Ortolani, Michael Burns, Sammy Hooda, or Suzanne Suarez, any to act, as Substitute Trustee will sell the Property to the highest bidder for cash on the date, at the place, and no earlier than the time set forth above in the Sale Information section of this notice. The sale will begin within three hours after that time.

3. This sale shall be subject to any legal impediments to the sale of the Property and to any exceptions referenced in the Deed of Trust or appearing of record to the extent the same are still in effect and shall not cover any property that has been released from the lien of the Deed of Trust.

Exhibit 1-7
Page 32 of 33   **Appendix 73**

4.  No warranties, express or implied, including but not limited to the implied warranties of merchantability and fitness for a particular purpose shall be conveyed at the sale, save and except the Grantor's warranties specifically authorized by the Grantor in the Deed of Trust.  The property shall be offered "AS-IS",   purchasers will buy the property "at the purchaser's own risk" and "at his peril", and no representation is made concerning the quality or nature of title to be acquired.  Purchasers will receive whatever interest Grantor and Grantor's assigns have in the property, subject to any liens or interests of any kind that may survive the sale.  Interested persons are encouraged to consult counsel of their choice prior to participating in the sale of the property.

Very truly yours,

Bonial & Associates, P.C.

Exhibit 1-7
Page 33 of 33
**Appendix 74**

4600
DS03 · 278330/Title Texas/DS

2643149

4289657        $46.00   Deed of Trust
11/20/03

After Recording Return To:

Sebring Capital Partners, Limited Partnership
4000 International Pkwy, #3000
Carrollton, Texas 75007

——————————— [Space Above This Line For Recording Data] ———————————

Loan Number ▉▉▉▉
MERS Number ▉▉▉▉▉▉

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **NOVEMBER 13, 2003**, together with all Riders to this document.

**(B) "Borrower"** is **KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL**. Borrower is the grantor under this Security Instrument.

**(C) "Lender"** is **SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP**. Lender is a **PARTNERSHIP** organized and existing under the laws of **THE STATE OF DELAWARE**. Lender's address is **4000 INTERNATIONAL PKWY, #3000, CARROLLTON, TEXAS 75007**. Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D) "Trustee"** is **DON W. LEDBETTER**. Trustee's address is **17130 DALLAS PARKWAY, #115, DALLAS, TEXAS 75248**.

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **NOVEMBER 13, 2003**. The Note states that Borrower owes Lender **ONE HUNDRED TWENTY-EIGHT THOUSAND SEVEN HUNDRED AND 00/100ths** Dollars (U.S.**$128,700.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **DECEMBER 1, 2033**.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

2003 230 03335

*...ge 1 of 12 pages)*

Exhibit 2
Page 1 of 18   Appendix 75

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider

☐ Balloon Rider ☐ Planned Unit Development Rider

☐ 1-4 Family Rider ☐ Biweekly Payment Rider ☒ Floor Rate Rider

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____ County _____ of _____ DALLAS _____:

[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE CITY OF DUNCANVILLE, DALLAS COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY, TEXAS

which currently has the address of __218 HUMMINGBIRD LANE_____

[Street]

DUNCANVILLE_____, Texas_____75137_____ ("Property Address"):

[City]      [Zip Code]

*page 2 of 12 pages)*

Exhibit 2
Page 2 of 18   **Appendix 76**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT ~~~~~~~~~~~~~~~~~~~~~~ *(Page 3 of 12 pages)*

Exhibit 2
Page 3 of 18   **Appendix 77**

Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any  or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for  which payment of Funds has been  waived by Lender and,  if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation  to make such payments and to provide receipts shall for all purposes be  deemed to be a covenant and  agreement contained  in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to  pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then  be obligated under Section 9  to  repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at  any  time  by  a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified  under  RESPA,  and  (b) not  to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the  amount  of  Funds due on  the  basis  of  current data and  reasonable  estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if  Lender  is  an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply  the  Funds  to  pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest  on  the Funds and  Applicable  Law requires Lender to make such a charge.  Unless an agreement is made in writing  or  Applicable  Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or  earnings on the Funds.  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds.  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is  a  surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds  in  accordance  with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower  as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with  RESPA, but  in  no  more  than  12  monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall  notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.**  Borrower  shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which  can  attain  priority  over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues,  Fees, and Assessments, if any.  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower  shall  promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing  to  the  payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing  such  agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings  which  in  Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only  until  such  proceedings  are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating  the  lien  to  this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which can  attain  priority over this Security Instrument, Lender may give Borrower a notice identifying the lien.  Within 10 days of the date  on which  that notice  is given, Borrower  shall  satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender  may  require  Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.**  Borrower  shall  keep the improvements now existing or hereafter erected on the Property insured against  loss  by  fire, hazards included within the term "extended  coverage," and any other hazards including, but not limited to, earthquakes  and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels)  and  for  the  periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change  during the  term of the Loan.  The insurance carrier  providing the insurance shall be chosen by Borrower subject to Lender's  right to  disapprove Borrower's choice, which right shall not be exercised unreasonably.  Lender may require Borrower to pay,  in  connection  with this Loan, either: (a)  a one-time charge for flood zone determination, certification  and tracking services;  or (b)  a one-time charge for  flood zone determination  and certification services and subsequent charges each time remappings  or  similar  changes occur which reasonably might affect such determination or certification.  Borrower shall also be responsible  for  the  payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

*(page 4 of 12 pages)*

Exhibit 2
Page 4 of 18   **Appendix 78**

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

*age 5 of 12 pages)*

Exhibit 2
Page 5 of 18   **Appendix 79**

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

Exhibit 2
Page 6 of 18   **Appendix 80**

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

*(Page 7 of 12 pages)*

Exhibit 2
Page 7 of 18
Appendix 81

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

*(Page 8 of 12 pages)*

Exhibit 2
Page 8 of 18    **Appendix 82**

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

*Page 9 of 12 pages)*

Exhibit 2
Page 9 of 18   **Appendix 83**

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

*(Page 10 of 12 pages)*

Exhibit 2
Page 10 of 18   **Appendix 84**

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:
☒ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

*(Page 11 of 12 pages)*

Exhibit 2
Page 11 of 18   **Appendix 85**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
KENNETH MCDOUGAL                     -Borrower

_____ (Seal)
DAVIDA J. MCDOUGAL                    -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

———————————— [Space Below This Line For Acknowledgment] ————————————

State of TEXAS                        )
County of  Dallas                     )
     This instrument was acknowledged before me on November 13, 2003 by KENNETH MCDOUGAL
AND SPOUSE, DAVIDA J. MCDOUGAL .
(Seal)
                                      _____
                                      Notary Public, State of TEXAS
My commission expires:                Notary's typed or printed name:

_____

TEXAS–Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044  1/01  (page 12 of 12 pages)

STATE OF TEXAS
My Comm. Exp. 10-22-2005

CECILIA FUENTES
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 10-22-2005

230 03406

Exhibit 2
Page 12 of 18   **Appendix 86**

BY SIGNING BELOW, Borrower acknowledges and agrees to the terms contained in this Floor Rate Rider.

_____(Seal)        _____(Seal)
KENNETH MCDOUGAL              -Borrower    DAVIDA J. MCDOUGAL          -Borrower

_____(Seal)        _____(Seal)
                              -Borrower                               -Borrower

_____(Seal)        _____(Seal)
                              -Borrower                               -Borrower

_____(Seal)        _____(Seal)
                              -Borrower                               -Borrower

Exhibit 2
Page 13 of 18   **Appendix 87**

Loan Number ███████

# ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 13TH day of NOVEMBER, 2003, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Note to SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

218 HUMMINGBIRD LANE, DUNCANVILLE, TEXAS 75137
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **8.375%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of DECEMBER, 2005, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding EIGHT AND ONE-EIGHTH percentage points (**8.125%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)–Single Family–Freddie Mac UNIFORM INSTRUMENT   Form 3192 1/01   *(page 1 of 3 pages)*

ZMB 239 03408

Exhibit 2
Page 14 of 18   **Appendix 88**

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.375%** or less than **8.375%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE AND ONE-HALF** percentage point(s) (**1.500%**) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **15.375%**.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include  information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but  not  limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment  sales  contract  or  escrow  agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If  all  or  any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without  Lender's  prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender  to  evaluate the intended transferee as if a new loan were being made to the transferee; and  (b)  Lender reasonably determines that Lender's security will not be impaired by the loan assumption  and  that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition  to  Lender's consent to the loan assumption.  Lender may also require the transferee to  sign  an assumption agreement that is acceptable to Lender and that obligates the transferee to  keep  all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the  expiration  of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)--Single Family--Freddie Mac UNIFORM INSTRUMENT   Form 3192 1/01   *(page 2 of 3 pages)*

Exhibit 2
Page 15 of 18   **Appendix 89**

Loan Number █████████

## FLOOR RATE RIDER
## RIDER TO DEED OF TRUST

THIS FLOOR RATE RIDER is made this 13TH day of NOVEMBER, 2003, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") of the same date made by the undersigned (the "Borrower") to SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP (the "Lender") and to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the Borrower to secure the Note, including any Adjustable Rate Rider attached thereto, and covering the property described in the Security Instrument and located at:

218 HUMMINGBIRD LANE, DUNCANVILLE, TEXAS 75137

[Property Address]

### AMENDMENT TO NOTE AND SECURITY INSTRUMENT

1. Section 4.(D) of the Note and the corresponding Section 4.(D) under Additional Covenant A. of the Adjustable Rate Rider to the Security Instrument is amended to read and be as follows:

(D)  Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than **11.375%** or less than **8.375%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND ONE-HALF ( **1.500%** ) from the rate of interest I have been paying for the preceding six months.  My yearly interest rate will never be greater than a maximum rate of **15.375%**, or a minimum, or floor, rate of **8.375%**.

2. The disclosure appearing in bold type face on page 1. of the Note is amended to read and be as follows:

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE AND THE MINIMUM, OR FLOOR, RATE I MUST PAY.

3. In the event that the Note is ever sold, assigned or transferred to the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, and the rules and regulations of the applicable agency do not permit a Floor Rate Rider with the terms contained herein, then this Floor Rate Rider and expressly its amended provisions with respect to establishing a minimum, or floor rate, shall thereupon terminate and shall be of no further force and effect. Any such termination of this Floor Rate Rider shall be effective as of the first Change Date to occur after the date of any such sale, assignment or transfer, and thereupon and thereafter the Note shall be in full force and effect in accordance with its original terms as set out in Section 4.(D) of the Note as if this Floor Rate Rider had never been incorporated into or amended the Note.

2003 230 03410

Exhibit 2
Page 16 of 18   **Appendix 90**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
KENNETH MCDOUGAL                    -Borrower

_____ (Seal)
DAVIDA J. MCDOUGAL                  -Borrower

MULTISTATE ADJUSTABLE RATE RIDER (LIBOR Index)--Single Family--Freddie Mac UNIFORM INSTRUMENT   Form 3192 1/01   (page 3 of 3 pages)

Exhibit 2
Page 17 of 18   **Appendix 91**



Exhibit 2
Page 18 of 18   **Appendix 92**



HPP  20090089233

3 PGS

# APPOINTMENT OF SUBSTITUTE TRUSTEE

| | | |
|---|---|---|
| STATE OF Texas | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS THAT: |
| COUNTY OF Dallas | § | |

WHEREAS, on 11/13/2003, KENNETH MCDOUGAL AND SPOUSE, DAVIDA J. MCDOUGAL executed and delivered that Deed of Trust, to DON W. LEDBETTER, the original trustee, which is recorded on 11/18/2003 in Instrument No. 2643149, Volume 2003230, Page 3395 of the real property records of Dallas County, Texas, to secure the payment of a Promissory Note in the principal amount of $128,700.00 payable to the order of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS A NOMINEE FOR SEBRING CAPITAL PARTNERS, LIMITED PARTNERSHIP; and is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

WHEREAS, default, as same is defined in the Promissory Note and/or the Deed of Trust, has occurred the majority thereof has been accelerated, and the outstanding Debt on same is now wholly due; and

THEREFORE, the undersigned, the legal owner of the Promissory Note, for reasons satisfactory to itself, does hereby remove DON W. LEDBETTER the Trustee(s) named in the Deed of Trust, and all successors thereto, and does hereby appoint and constitute Shelley Ortolani, Mary Mancuso, Jim Akins, Noel McNally, Cassandra Inouye or Erika Puentes, as Substitute Trustee, who shall have all the powers and estates delegated to the original Trustee(s) in such Deed of Trust, and hereby requests that the Substitute Trustee, or any one of them, exercise the power of sale described in the Deed of Trust in accordance with the terms and provisions thereof.

EXECUTED EFFECTIVE AS OF
3/9/09

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS A NOMINEE FOR SEBRING
CAPITAL PARTNERS, LIMITED PARTNERSHIP

By: _____

Name:   Erika Puentes,

Title:   Limited Signing Officer

Exhibit 3
Page 1 of 3   **Appendix 93**

STATE OF California

§

COUNTY OF Los Angeles

§

On 3/9/09 before me SALLY BELTRAN, a Notary Public, personally appeared Erika Puentes, Limited Signing Officer who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _____(Seal)

SALLY BELTRAN
Commission # 1777085
Notary Public - California
Los Angeles County
My Comm. Expires Oct 30, 2011

AFTER RECORDING, RETURN TO:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California  91504-3120
TX-W-190871-C

Exhibit 3
Page 2 of 3
**Appendix 94**

EXHIBIT A

LOT 22, BLOCK 7, OF FOURTH SECTION SWAN RIDGE ESTATES, AN ADDITION TO THE
CITY OF DUNCANVILLE, DALLAS COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF
RECORDED IN VOLUME 78016, PAGE 57, OF THE MAP RECORDS OF DALLAS COUNTY,
TEXAS

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

John F. Warren, County Clerk
Dallas County TEXAS
March 30, 2009  02:45:28 PM
FEE: $24.00

200900089233

Exhibit 3
Page 3 of 3   **Appendix 95**

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| DAVIDA MCDOUGAL | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL NO. 3:19-CV-02256-E |
| | § | |
| TRINITY FINANCIAL SERVICES, | § | |
| LLC and THE BANK OF NEW YORK | § | |
| MELLON TRUST COMPANY, | § | |
| NATIONAL ASSOCIATION FKA | § | |
| THE BANK OF NEW YORK TRUST | § | |
| COMPANY, N.A. AS SUCCESSOR | § | |
| TO JPMORGAN CHASE BANK N.A. | § | |
| AS TRUSTEE FOR RASC2004-KS2 | § | |
| | § | |
| *Defendants.* | § | |

---

## DECLARATION OF BRANDON HAKARI

---

1. My name is Brandon Hakari.  I am of sound mind and capable of making this unsworn declaration.  I am over the age of twenty-one (21) years and have never been convicted of a felony or crime involving dishonesty.  I am fully competent to testify to the matters herein.  I have personal knowledge of the facts stated herein, which are true and correct.

2. I am an employee of McCarthy & Holthus, LLP ("McCarthy"). I currently hold the position of Senior Litigation Attorney with McCarthy, and am an attorney for Trinity Financial Services, LLC in this litigation.  I have personal knowledge of the facts stated in this Declaration from my participation in this litigation and my review of my firm's file on this matter, and they are true and correct.

3. On May 1, 2020, Max M. Murphy, prior counsel for Trinity Financial Services, LLC, served Plaintiff's counsel with *Defendants' First Request for Admissions to Plaintiff*. A true and correct copy of *Defendants' First Request for Admissions to Plaintiff* is attached hereto and incorporated herein as Exhibit 4-1.

4. The deadline for Plaintiff to respond to *Defendants' First Request for Admissions to Plaintiff* had been extended by agreement between myself and Plaintiff's Counsel through February 2, 2021. As of the execution of this declaration, I have not received a response from Plaintiff to *Defendants' First Request for Admissions to Plaintiff* or a request for further extension of time to respond.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated the 23rd day of February, 2021.

Name:  Brandon Hakari

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **DAVIDA MCDOUGAL** | |
|     **Plaintiff** | |
| **v.** | **CASE NO.: 3:19-cv-02256-E** |
| **TRINITY FINANCIAL SERVICES, LLC and THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RASC2004-KS2** | |
|     **Defendants** | |

## DEFENDANTS' FIRST REQUEST FOR ADMISSIONS TO PLAINTIFF

TO:    Plaintiff Davida McDougal, by and through her counsel of record, Jason A. LeBoeuf, Robert C. Vilt, Vilt and Associates, P.C., 2435 North Central Expressway, Suite 1200, Richardson, TX 75080.

        Pursuant to Federal Rule of Civil Procedure 36, Defendants Trinity Financial Services, LLC and The Bank of New York Mellon Trust Company, National Association FKA The Bank of New York Trust Company, N.A. as Successor to JPMorgan Chase Bank N.A. as Trustee for RASC2004-KS2 (collectively referred to as "Defendants") serve this First Request for Admissions to Plaintiff Davida McDougal ("Plaintiff"). Pursuant to the Federal Rules of Civil Procedure, you are hereby directed to serve a written response to the admission requests thirty (30) days after service of these requests, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, that part shall be

**DEFENDANTS' FIRST REQUEST FOR ADMISSIONS TO PLAINTIFF**      **PAGE 1**
Exhibit 4-1
Page 1 of 9   **Appendix 98**

specified.  Please provide your written response to the offices of ANGEL L. REYES & ASSOCIATES,

P.C., 8222 Douglas Avenue, Suite 400, Dallas, Texas 75225 or at such other location as the parties

shall mutually agree in writing, within thirty (30) days after service hereof.

Respectfully submitted,

Dated:  May 1, 2020        By:   _/s/ Max M. Murphy_____

                                        Ryan J Browne
                                        Texas Bar No. 00796262
                                        Max M. Murphy
                                        Texas Bar No. 24098159
                                        **ANGEL L. REYES & ASSOCIATES, P.C.**
                                        8222 Douglas Avenue, Suite 400
                                        Dallas, Texas 75225
                                        Phone: (214) 526-7900
                                        Fax: (214) 526-7910
                                        ryan@reyeslaw.com
                                        max@reyeslaw.com
                                        **ATTORNEYS FOR DEFENDANTS TRINITY FINANCIAL SERVICES, LLC AND THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK N.A. AS TRUSTEE FOR RASC2004-KS2**

**CERTIFICATE OF SERVICE**

       The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rules. As such, the foregoing was served on all counsel of record who have consented to electronic service on May 1, 2020.

                                        _/s/ Max M. Murphy_____
                                        Max M. Murphy

**DEFENDANTS' FIRST REQUEST FOR ADMISSIONS TO PLAINTIFF**         **PAGE 2**
Exhibit 4-1
Page 2 of 9   **Appendix 99**

## TERMS AND DEFINITIONS

"**Plaintiff**," "**you**," "**your**," and/or "**Borrower**" shall refer to Plaintiff Davida McDougal as well as anyone acting on their behalf, including, but not limited to, Davida McDougal's successors, assigns, agents representatives, and attorneys.

"**Defendants**" shall refer to Trinity Financial Services, LLC and The Bank of New York Mellon Trust Company, National Association FKA The Bank of New York Trust Company, N.A. as Successor to JPMorgan Chase Bank N.A. as Trustee for RASC2004-KS2.

""**Petition**," "**Complaint**" or "**pleading**" shall refer to Plaintiff's Original Petition, Application for Injunctive Relief, and Request for Disclosures filed in State Court Cause No. CC-19-03859-A on or about July 1, 2019 and all prior Petitions, supplements and/or amendments made during this cause.

"**Property**" shall refer to the property located at 218 Hummingbird Lane, Duncanville, Texas 75137.

"**Note**" refers to the Purchase Money Note signed by Kenneth McDougal and Davida J. McDougal on or about November 13, 2003 in the original principal amount of **$14,300.00.**

"**Deed of Trust**" refers to the Purchase Money Security Document signed by Kenneth McDougal and Davida J. McDougal on or about November 13, 2003 and recorded in the Real Property Records of Dallas County, Texas as County Clerk No. 2643152.

"**Loan**" refers to the Note and Deed of Trust collectively.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1**:  Please admit the document attached hereto as Exhibit A is a true, correct and complete copy of the Note you executed for the Property made the subject of this lawsuit.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 2**:  Please admit the document attached hereto as Exhibit B is a true, correct and complete copy of the Deed of Trust for the Property made the basis of this lawsuit.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 3**:  Please admit that at the time of the filing of this lawsuit, the Loan was in default.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 4**:  Please admit that, at all times during the non-judicial foreclosure process, the Loan was in default as a result of your failure to make all of the payments then due and owing.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 5**:  Please admit all of the payments tendered by you on the Loan were applied in accordance with the terms of the Loan.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 6**:  Please admit you did not receive any notice of acceleration of the Loan's maturity between January 2009 through January 2019.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 7**:  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between March 1, 2009 and March 1, 2019.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 8:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2010 and December 31, 2010.

    **RESPONSE**:


**REQUEST FOR ADMISSION NO. 9:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2011 and December 31, 2011.

    **RESPONSE**:


**REQUEST FOR ADMISSION NO. 10:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2012 and December 31, 2012.

    **RESPONSE**:


**REQUEST FOR ADMISSION NO. 11:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2013 and December 31, 2013.

    **RESPONSE**:


**REQUEST FOR ADMISSION NO. 12:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2014 and December 31, 2014.

    **RESPONSE**:


**REQUEST FOR ADMISSION NO. 13:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2015 and December 31, 2015.

    **RESPONSE**:


**REQUEST FOR ADMISSION NO. 14:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2016 and December 31, 2016.

**RESPONSE**:

**REQUEST FOR ADMISSION NO. 15:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2017 and December 31, 2017.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 16:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2018 and December 31, 2018.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 17:**  Please admit that a default notice and/or notice of demand for payment was sent to you by Defendants and/or Defendants' predecessors between January 1, 2019 and July 2, 2019.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 18:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between March 1, 2009 and December 31, 2009.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 19:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2010 and December 31, 2010.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 20:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2011 and December 31, 2011.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 21:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2012 and December 31, 2012.

> **RESPONSE**:

**REQUEST FOR ADMISSION NO. 22:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2013 and December 31, 2013.

> **RESPONSE**:

**REQUEST FOR ADMISSION NO. 23:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2014 and December 31, 2014.

> **RESPONSE**:

**REQUEST FOR ADMISSION NO. 24:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2015 and December 31, 2015.

> **RESPONSE**:

**REQUEST FOR ADMISSION NO. 25:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2016 and December 31, 2016.

> **RESPONSE**:

**REQUEST FOR ADMISSION NO. 26:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2017 and December 31, 2017.

> **RESPONSE**:

**REQUEST FOR ADMISSION NO. 27:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2018 and December 31, 2018.

**RESPONSE**:

**REQUEST FOR ADMISSION NO. 28:**  Please admit that a mortgage account statement was sent to you by Defendants and/or Defendants' predecessors between January 1, 2019 and July 2, 2019.

**RESPONSE**:

**REQUEST FOR ADMISSION NO. 29:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between March 1, 2009 and December 31, 2009.

**RESPONSE**:

**REQUEST FOR ADMISSION NO. 30:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2010 and December 31, 2010.

**RESPONSE**:

**REQUEST FOR ADMISSION NO. 31:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2011 and December 31, 2011.

**RESPONSE**:

**REQUEST FOR ADMISSION NO. 32:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2012 and December 31, 2012.

**RESPONSE**:

**REQUEST FOR ADMISSION NO. 33:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2013 and December 31, 2013.

**RESPONSE**:

**REQUEST FOR ADMISSION NO. 34:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2014 and December 31, 2014.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 35:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2015 and December 31, 2015.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 36:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2016 and December 31, 2016.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 37:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2017 and December 31, 2017.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 38:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2018 and December 31, 2018.

    **RESPONSE**:

**REQUEST FOR ADMISSION NO. 39:**  Please admit that you made a monthly mortgage payment to Defendants and/or Defendants' predecessors between January 1, 2019 and July 2, 2019.

    **RESPONSE**: